Francis A. WILLHAUCK, Jr., et al., Plaintiffs, Appellants,

v.

Paul HALPIN, et al., Defendants, Appellees.

No. 91–1328.

United States Court of Appeals, First Circuit.

Heard Oct. 11, 1991.

Decided Dec. 23, 1991.

Rehearing and Rehearing En Banc Denied Jan. 29, 1992.

Robert C. Hahn with whom Hahn & Matkov, Boston, Mass., was on brief, for appellant.

John P. Flynn with whom Murphy Hesse, Toomey & Lehane, Quincy, Mass., was on brief, for appellees Town of Milton, John Moriarty, Robert Galvin and James Rogers.

Peter M. Coppinger, Asst. Atty. Gen., with whom Scott Harshbarger, Atty. Gen., Boston, Mass., was on brief, for appellees Metropolitan Dist. Com'n, Paul Halpin, John Perry, Donald Callender, Richard Huffam and J.B. Mills.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and TAURO,* District Judge.

BOWNES, Senior Circuit Judge.

This is an appeal of Augean dimensions arising from the failure of the plaintiffs to prevail in a multi-party, multi-claim action under 42 U.S.C. § 1983. The plaintiffs in this case are Francis A. Willhauck, Jr.

---

* Of the District of Massachusetts, sitting by designation.

("Willhauck") and several of his family members. The defendants are various police officers in their individual capacities, the Towns of Milton and Dedham, Norfolk and Suffolk Counties of Massachusetts, and the Metropolitan District Commission ("MDC"). Willhauck's § 1983 claims arose from a late-night, high-speed automobile chase through Boston and some surrounding towns that ended with his arrest and alleged beating by the police, and from a subsequent late-night intrusion by police officers into the Willhauck household several months after the car chase. Willhauck's claims also relate to the conduct of Norfolk and Suffolk County prosecutors who brought separate actions against him for offenses committed on the night of the car chase.

The district court dismissed Willhauck's claims against the Towns of Milton and Dedham, the MDC, and Norfolk and Suffolk Counties. It also dismissed constitutional challenges to provisions of Massachusetts law governing the authority of police officers to order vehicles to stop (Mass.Gen.Laws ch. 90, § 25), and the Massachusetts Rule of Criminal Procedure governing consolidation of cases among separate counties (Mass.R.Crim.P. 37(b)(2)). Claims against the officers involved in the late-night intrusion into the Willhauck household were also dismissed. The case went to trial against the six remaining defendants, all of whom were police officers involved in the car chase and alleged beating. The district court granted directed verdicts for four of the officers, and the jury found in favor of the two remaining officers.

Willhauck appeals the district court's dismissal of his constitutional challenges to Mass.Gen.Laws ch. 90, § 25 and Mass. R.Crim.P. 37(b)(2). He also attacks the dismissals of the Town of Milton and MDC. In addition, Willhauck challenges certain rulings by the district court prior to and during trial barring argument on several of his theories of constitutional injury. Neither the directed verdicts nor the jury verdict have been challenged on appeal.

## I. FACTS

### A. *The High Speed Chase*

The following facts are based on the appendix submitted by Willhauck in this appeal. Willhauck's saga began on the evening of July 1, 1979, when he visited a bar in Stoughton, Massachusetts. There, Willhauck discovered his girlfriend, with whom he had broken up the day before, in the company of another man. Willhauck got into an argument with his girlfriend and her date. The argument continued outside the bar and developed into a fight between Willhauck and his girlfriend's companion. During the fight, Willhauck's antagonist attacked him with a motorcycle chain, hitting him on the head. Willhauck decided to abandon the fight, although he testified that the blow from the chain drew no blood.

After leaving the lounge in his car, Willhauck decided to go to his father's house on Brook Road in Milton. At his father's house, Willhauck called his girlfriend and became involved in another heated argument. He then decided to visit his girlfriend at her home in Randolph, and set out in his car from his father's house in Milton. On the way to see his girlfriend, however, Willhauck concluded that it was too late and that he should return to his father's house. He started to drive back to Milton via Canton Avenue.

At about one a.m. that night, Officer John Moriarty of the Milton Police Department received a radio report in his police cruiser about a suspicious person in the vicinity of Woodland Road and Canton Avenue. The report described the suspect as wearing a green jogging outfit. Officer Moriarty immediately headed for Woodland Road via Canton Avenue. Moriarty then saw a pair of taillights moving away from him on Canton Avenue. It was Willhauck's car. As Moriarty followed the car, it began to accelerate. Because the car was speeding and because of the suspicious activity report, Moriarty turned on his blue lights, anticipating that the car would stop. Moriarty estimated that both the car and the cruiser were travelling at least fifty

miles per hour at the time he turned on the cruiser's blue lights.

Willhauck had a different recollection of these events. He claimed that he was observing the thirty mile an hour speed limit at the time he noticed the cruiser's flashing blue lights in his rear view mirror. Because he felt that he hadn't done "anything wrong," Willhauck got "mad," and decided to try "speeding out of there to get away from the police officer."

A high speed chase then began, with Willhauck accelerating along Canton Avenue to speeds which Moriarty estimated to approach sixty miles an hour. The chase moved to Blue Hills Parkway in Milton. Willhauck attempted to turn off Blue Hills Parkway onto Brook Road, where Willhauck's father lived, but found the exit obstructed by a second Milton police cruiser, manned by Sergeant Robert Galvin. It appeared to Moriarty that Willhauck was going to ram Sergeant Galvin's cruiser, which was parked with its blue lights flashing. Willhauck, however, continued heading north towards Boston on Blue Hills Parkway, reaching speeds that Moriarty estimated at eighty-five to ninety miles an hour.

Crossing the line between Milton and the City of Boston, Willhauck led the Milton police on a chase lasting approximately twenty to twenty-five minutes through Mattapan Square, Roslindale, West Roxbury, and Dedham. Both Willhauck and the police passed through stop lights and intersections at high speeds. Willhauck ignored the blue lights and sirens of the pursuing cruisers. Officer Moriarty testified that he saw Willhauck almost hit several pedestrians in the Mattapan Square business district, and then again around Wellington Hill Street. After Moriarty radioed that he was attempting to stop the car, several MDC cruisers joined the pursuit.

Willhauck entered the vicinity of Roslindale Square, where he side-swiped an MDC cruiser occupied by Officers Paul Halpin and John Perry. Officer Halpin testified that he reversed his cruiser in an attempt to get out of Willhauck's way, so that the resulting impact to the front of his cruiser was not severe. After this collision, which Officer Moriarty characterized as "minor," Halpin and Perry pursued Willhauck southbound on Washington street, and then onto Spring Street, leading the two Milton cruisers in the chase. On Spring Street, Halpin pulled his cruiser parallel to Willhauck's car on the driver's side, with the result that the two cars were moving alongside each other at the same high speed. Officers Halpin and Moriarty both testified that at this point Willhauck attempted a left turn, causing Halpin and Perry's cruiser to spin out of control to a stop in front of the Veterans Hospital.

Rather than pursue Willhauck's vehicle, Officers Halpin and Perry decided to drive to a roadblock that had been set up with the assistance of police cruisers from the Town of Dedham. Driving behind a Dedham cruiser, Halpin entered the intersection of Oakmere and Laurie Avenues in West Roxbury. There, Halpin saw another Dedham police car and other police vehicles from the City of Boston, and brought his vehicle to a stop on Laurie Avenue. Meanwhile, Willhauck was driving along Laurie Avenue, with the Milton police cruisers following him at a distance. As he approached the roadblock, Willhauck found himself surrounded by police cruisers.

Willhauck claimed that he pulled over his car to a stop on the left-hand side of the road, realizing that "this [was] it." According to Willhauck, after he stopped his car the MDC cruiser suddenly accelerated and rammed the front of his car. Officer Halpin testified that Willhauck's vehicle "came over the hill and struck [his cruiser] head on." Officer Moriarty agreed that it was Willhauck who rammed Halpin's cruiser. Willhauck's car was severely damaged. Milton Officers Moriarty and Galvin arrived after the collision between Willhauck's vehicle and Officers Halpin and Perry's cruiser.

Willhauck testified that after being rammed by Halpin and Perry's cruiser, he picked himself off the floor of his car and voluntarily stepped outside, raising his hands when he saw that the police officers

had their guns drawn. He recalled saying "All right. All right." According to Willhauck, he was hit on the back of the head a number of times and recalled seeing Officer Halpin hitting him with his gun on the back of his head before passing out. Willhauck stated that when he came to in an ambulance, he asked Halpin why he had hit him, and claims that Halpin responded that he was "'lucky I didn't kill you.'" To corroborate his story, Willhauck introduced into evidence a picture which showed a group of officers, including Officers Moriarty and Halpin, standing around while Willhauck was lying on the ground. In the picture, in which Willhauck is apparently unconscious and bleeding from his head, Halpin has his left foot on Willhauck's buttocks.

Officer Moriarty testified that after arriving at the scene of the collision, he saw police units from the MDC, Town of Dedham, and the City of Boston. He recalled seeing six or seven police officers, whom he could not identify, standing by Willhauck's car door. Willhauck was sitting in his car with his hands on the wheel. According to Moriarty, a struggle took place among several of the officers who were trying to pull Willhauck out of the car. Moriarty, however, did not recall Willhauck offering any resistance. He insisted that Halpin was to the rear of the group that removed Willhauck from his car. Moriarty testified that he was jostled to the back of the group of officers, and could not make out what happened during the "commotion" arising from the removal of Willhauck from his car.

Moriarty further testified that he did not remember having any physical contact with Willhauck until Willhauck was lying handcuffed on the ground, naked from the waist up. He recalled noticing that Willhauck had a head wound consisting of a cut and lacerations and decided to administer first aid with the help of Officer Halpin. Moriarty, a trained Emergency Medical Technician, testified that first aid was necessary to stop Willhauck's head from bleeding freely. Moriarty stated that while he and Halpin administered first aid, Willhauck told them about being hit on the head with a bike chain earlier in the evening. He testified that Willhauck was not unconscious, but was instead "thrashing around, bucking, [and] yelling," while lying down handcuffed on the ground. According to Moriarty, there was "no excessive physical force by anybody" during Willhauck's arrest. Willhauck was arrested and booked by the MDC.

## B. State Charges Against Willhauck

After the chase, Officer Moriarty contacted the Milton Police Station to report the MDC's arrest of Willhauck. While at the MDC station, Moriarty issued citations charging Willhauck with various offenses. Moriarty's charges, which were lodged later in the day at the Quincy District Court in Norfolk County, cited Willhauck's "failure to stop at the signal of a police officer," "driving so as to endanger," "failure to slow for an intersection," and "driving at an unreasonable speed."

The same day, on July 2, 1979, Officers Halpin and Perry filed additional charges against Willhauck in West Roxbury District Court in Suffolk County. Willhauck was charged with "failure to stop at the signal of a police officer," "driving so as to endanger," and two felony complaints of "assault and battery with a dangerous weapon, to wit a motor vehicle."

## C. The Nighttime Intrusion at the Willhauck Household

About six months later, on January 9, 1980, four or five police cruisers pulled into the yard of Willhauck's father's house in Milton with their blue lights flashing. Willhauck claimed that the police contingent consisted of three officers from the MDC—Officers Richard Huffam, J.B. Mills, and Donald Callender—and two Town of Milton officers—James Rogers and an unidentified officer. The officers had a default warrant for Willhauck's arrest, which had been issued because of his alleged failure to appear in West Roxbury District Court as summonsed the previous month.

Willhauck alleged in his complaint that the officers "pounded on the door, demanded entry, woke up and upset the entire household ... and attempted to arrest Willhauck...." Members of the Willhauck household present at the time of the officers' entry included Willhauck, his father Francis A. Willhauck, Sr., his mother Beryl, and his brother and sister James and Rosemary Willhauck. Willhauck Sr. called his son's attorney. When Willhauck's lawyer tried to speak with the officers, they apparently hung up on him. Later, the lawyer was able to contact the MDC Night Commander, and convinced him that the warrant had been erroneously issued. Subsequently, the Night Commander ordered the MDC Officers to return to their station. The officers left without arresting Willhauck. Willhauck alleged that the Clerk's Office of the West Roxbury District Court vacated the default warrant after determining that it had been erroneously issued.

## II. PROCEDURAL HISTORY

Because of the complicated procedural history underlying Willhauck's claims in the instant § 1983 action, and the fact that the state prosecutions arising from the car chase comprise part of the actions complained of, it is necessary to describe in detail the prior history of this case.

A. *Related Litigation Underlying Willhauck's § 1983 Action*

1. The State Law Charges Against Willhauck

Later in January of 1980, Willhauck's attorneys attempted to consolidate the charges for the various vehicular offenses pending in West Roxbury District Court in Suffolk County and in Quincy District Court in Norfolk County. Rule 37 of the Massachusetts Rules of Criminal Procedure permits a trial court to order the consolidation of charges pending in different counties of the Commonwealth provided the parties obtain "the written approval of the prosecuting attorney in each ... county...." Mass.R.Crim.P. 37(b)(2). Willhauck, however, was unable to obtain the consent of the prosecuting attorneys in

Norfolk and Suffolk Counties to consolidation. In March of 1980, the West Roxbury District Court found probable cause to support Officers Halpin and Perry's charges of assault and battery with an automobile, and bound the case over to Suffolk Superior Court on the felony charge.

Alleging that the refusal of the prosecuting attorneys to consolidate was based on parochial reasons that were "prejudicial to him, to the Commonwealth and to justice," Willhauck moved for consolidation of the pending Quincy District Court action in Suffolk Superior Court. The Superior Court denied a motion for transfer and joinder on May 28, 1980. Four days later, Willhauck petitioned the Massachusetts Supreme Judicial Court for review of the denial of his consolidation motion. A single justice declined to order consolidation of the charges for trial. *See Willhauck v. Commonwealth*, No. 80–217 Civ. (Mass. June 3, 1980).

2. Willhauck's First § 1983 Action

Following his failure to obtain consolidation of the state charges in the Massachusetts courts, Willhauck brought a § 1983 action in the District Court for the District of Massachusetts on August 1, 1980. Contending that the consent requirement of Rule 37(b)(2) gave prosecuting attorneys a veto over transfer and consolidation, Willhauck sought a declaration that the rule violated the Double Jeopardy and Due Process Clauses of the Constitution. *See Willhauck v. Flanagan*, No. 80–1733–G (D.Mass. filed Aug. 1, 1980). Willhauck sought to enjoin the criminal prosecutions against him in the two county courts. The district court, invoking the *Younger* abstention doctrine, declined to issue a TRO. Willhauck then moved in this court for a stay of the district court's denial of the TRO. We denied this motion on August 13, 1980. *See Willhauck v. Flanagan*, 448 U.S. 1323, 1324–25, 101 S.Ct. 10, 11, 65 L.Ed.2d 1147 (1980).

Willhauck next applied to Justice Brennan, in his capacity as Circuit Justice, for a stay pending appeal to this court of the district court's order denying the TRO.

*See id.* at 1325, 101 S.Ct. at 11. Justice Brennan noted that Willhauck had "a potentially substantial double jeopardy claim, if not on the face of the Massachusetts Rule or as applied to him, then simply on the possibility the State may conduct simultaneous prosecutions against him in two separate courts on the same offenses." *Id.* Justice Brennan declined, however, to grant Willhauck a stay on the grounds that his application was premature, since jeopardy had not attached in either of the cases.[1] *Id.*

### 3. Resolution of the State Charges and Double Jeopardy Claim

After Justice Brennan's denial of a stay, the case against Willhauck in Suffolk Superior Court proceeded. In October, 1980, a Suffolk jury acquitted Willhauck on the two assault charges, but convicted him on the two misdemeanor charges: failure to stop for a police officer and driving so as to endanger. The court imposed a suspended sentence, probation, and a fine. At the same time, Willhauck's case in Quincy District Court in Norfolk County was transferred for trial to Dedham District Court in the same county. There, before trial, Willhauck moved to dismiss raising, *inter alia,* double jeopardy as a bar to a second prosecution. In February, 1981, the Dedham court denied the motion for dismissal.

Willhauck again petitioned a single justice of the Massachusetts Supreme Judicial Court for relief, seeking a stay of trial in Dedham pending a full bench hearing by the Supreme Judicial Court of his motion to dismiss. *See Willhauck v. Massachusetts,* No. 81–49 Civ. (Mass. March 26, 1981). Noting that the traffic violations charged in the Dedham case might, for sentencing purposes, prove to be lesser included offenses of the misdemeanor charges for which Willhauck had already been sen-

tenced in Suffolk Superior Court, Justice Wilkins remanded the case to the Dedham District Court for reconsideration. On remand, the district court concluded that to try Willhauck for driving offenses in Norfolk County would require proof of the same facts underlying his Suffolk Superior Court convictions. *See* Further Ruling on Defendant's Motion to Dismiss, *Massachusetts v. Willhauck,* No. 2872 Crim. (District Court Dept., Dedham Division, May 27, 1981). The Norfolk County charges were, therefore, dismissed.

Following the entry of final judgment in the Dedham District Court on July 9, 1981, Willhauck filed a consolidated appeal from the actions in both Norfolk (the Dedham dismissal) and Suffolk (the Suffolk Superior Court convictions) Counties, which was lodged with the clerk in each county. Willhauck's appeal was accepted by the Norfolk County clerk, but rejected as to the Suffolk Superior Court convictions, on the grounds that the appeal was untimely. Suffolk's clerk stated that Willhauck's "joint" appeal was "not in compliance with Mass.Appellate Rules." There do not appear to have been other filings in these state proceedings.[2]

### B. *Willhauck's Current § 1983 Claim*

#### 1. The Claims in District Court

Three years after the night of the car chase, on July 1, 1982, Willhauck and his family filed this § 1983 action in the District Court for the District of Massachusetts against sixteen individual and municipal defendants. Willhauck's complaint, as amended, sought declaratory relief, damages and attorneys fees on the basis of civil rights claims arising from 1) the car chase and alleged beating; 2) the nighttime intrusion into the Willhauck household; and 3) the subsequent state law prosecu-

---

1. Justice Brennan expressed no opinion on the issue of whether *Younger* abstention would bar a § 1983 action once jeopardy had attached in *one* proceeding. *See Willhauck v. Flanagan,* 448 U.S. 1323, 1325, 101 S.Ct. 10, 11, 65 L.Ed.2d 1147 (1980). He observed that once jeopardy attached in one of the state prosecutions, Willhauck would be able to raise his claim before

the trial judge in the other case. *Id.* at 1326, 101 S.Ct. at 12.

2. It appears from Willhauck's complaint in this action that he filed a petition in federal district court for a writ of habeas corpus on January 7, 1982, which was based on a constitutional challenge to Rule 37(b)(2). The district court apparently dismissed this petition.

tion of Willhauck in Suffolk and Norfolk Counties. As to each of these episodes, Willhauck alleged violations of his federal and Massachusetts constitutional rights, as well as supplemental state law tort claims.

In his claims relating to the car chase, Willhauck charged all the officers involved with, *inter alia*, an "unconstitutional attempt to stop, unlawful chase, unlawful destruction of property, unlawful arrest, police brutality, false imprisonment, malicious prosecution ... [and] conspiracy to obstruct justice and to deprive civil rights." The officers involved in the car chase from the Town of Milton (Officer Moriarty and Sergeant Galvin), Town of Dedham (Officers Belmonte, Dietenhofer and Tapsel), and MDC (Officers Halpin, Perry, and Callender), were sued in their individual capacities. In addition, Willhauck charged the Town of Milton, Town of Dedham, and the MDC with "negligent training and/or lack of supervision of their police force" resulting in Willhauck's alleged beating, and with allowing their officers, "pursuant to custom, policy and practice ..., [to] allow their police officers to stop motorists without cause." He also alleged a "custom, policy and practice" of allowing these police officers to "engage in high speed chases including running red lights and stop signs" in violation of Massachusetts law.

Willhauck and members of his father's household brought other claims in relation to the nighttime intrusion of January 1980. This portion of Willhauck's complaint centered on the officers' "unwarranted intrusion into [the Willhauck] home, [and] intentional infliction of emotional distress...." A different group of officers were named as defendants to these claims: Officers Huffam, Mills and Callender of the MDC, and Officer Rogers of the Milton Police. The Town of Milton and the MDC were cited for their "custom, policy and practice" of allowing nighttime service of ar-

rest warrants, a practice that Willhauck claimed violated the Fourth Amendment.

The balance of the claims in Willhauck's complaint relate to alleged civil rights violations and state law torts stemming from Willhauck's separate prosecutions in Norfolk and Suffolk Counties. This part of the complaint identifies these counties as additional defendants. Willhauck alleged that the unwillingness of prosecutors in each county to assent to consolidation of the charges against him under Mass.R.Crim.P. 37(b)(2) violated his constitutional rights because this refusal was an "unlawful harassment."

Along with his claims for damages under § 1983, Willhauck requested declaratory relief. He asked the district court to declare Mass.R.Crim.P. 37(b)(2) unconstitutional, on the grounds that it permitted piecemeal prosecutions in violation of the Supremacy and Double Jeopardy Clauses, and the Fifth, Sixth and Fourteenth Amendments.[3] Willhauck also challenged the constitutionality of the "stop provision" of Massachusetts state law under which Willhauck was charged for his "failure to stop at the signal of a police officer" in both the Norfolk and Suffolk County prosecutions. This provision, which is entitled "Refusal to submit to police officer," makes it an offense for a person operating a motor vehicle to refuse to stop when signalled to stop by a police officer. *See* Mass.Gen.Laws Ann. ch. 90, § 25 (West 1991). Willhauck claimed that section 25 gave "police officers the power to stop motor vehicles without reasonable cause" in violation of the Supremacy Clause and Fourth and Fourteenth Amendments. Willhauck further alleged that the "exercise of [this] stop power" under section 25 by the Town of Milton, MDC, and Officers Moriarty and Halpin violated his constitutional rights.

Finally, Willhauck alleged that the refusal of the Suffolk County clerk to forward

**3.** This claim reiterated those made in his earlier § 1983 action for injunctive relief to prevent the Norfolk and Suffolk County prosecution from proceeding. Early in the instant action, Willhauck sought consolidation of his preexisting § 1983 claim challenging the constitutionality of Mass.R.Crim.P. 37(b)(2) that was ultimately presented to Justice Brennan in 1980. *See* Plaintiffs' Motion to Consolidate, Appendix at 17. The motion, which was unopposed, was granted by the district court on October 24, 1982.

his appeal of his state law misdemeanor conviction on grounds of untimeliness was illustrative of a custom and practice of the county system of Massachusetts government to permit clerks to devise independent and inconsistent appellate procedural rules. This inconsistency in the application of the rules by county clerks, Willhauck alleged, violated criminal defendants' rights under the Supremacy Clause and Sixth and Fourteenth Amendments. Naming Suffolk County as defendant, Willhauck alleged that the refusal of the Suffolk clerk to accept his joint appeal after the dismissal of Willhauck's parallel Dedham case was an "unlawful harassment" redressable under § 1983.

### 2. Resolution of Willhauck's Claims in District Court

All of the defendants in this action filed motions to dismiss in response to Willhauck's complaint and amended complaint. The district court quickly granted the Town of Dedham's dismissal motion, in September of 1982.[4] Two years later, on August 27, 1984, the district court dismissed Willhauck's constitutional challenges to Mass. R.Crim.P. 37(b)(2) and Mass.Gen.L. ch. 90, § 25, reasoning that neither claim established a valid claim of constitutional deprivation for purposes of a § 1983 action. On the same day, the district court also granted the MDC's motion to dismiss, holding that the MDC was immune from suit under the Eleventh Amendment.

Several months later, on December 12, 1984, the district court granted the Town of Milton's motion to dismiss. *See Willhauck v. Halpin*, 599 F.Supp. 282 (D.Mass.1984). The district court rejected all of Willhauck's theories of municipal liability based on constitutional deprivations allegedly occurring during the car chase and later nighttime intrusion. *Id.* at 283.

Ten months later, the district court disposed of another group of defendants in the case. On October 18, 1985, after a hearing, the court granted the motions for dismissal by the three MDC police officers involved in the nighttime intrusion into the Willhauck household: Officers Callender, Huffam and Mills. The Milton officer involved in the nighttime intrusion, Officer Rogers, prevailed on a motion for summary judgment. Although it is not entirely clear from the record, Norfolk and Suffolk Counties appear to have been dismissed as defendants on the grounds that the claims against them had been "mooted" by the dismissal of the municipal defendants and of the MDC.[5]

Thus, by the time of trial in August of 1987, only six of the original defendants remained as defendants in the action, all of whom were police officers involved in the car chase and alleged beating of Willhauck—MDC Officers Halpin and Perry, Town of Milton Officers Moriarty and Galvin, and Town of Dedham Officers Dietenhofer and Tapsel.[6] The docket also indicates that all of the Willhauck family members involved in the nighttime intrusion were no longer listed as plaintiffs in the action, presumably as a result of the court's dismissal of all the defendants involved in that occurrence.

At the close of Willhauck's evidence, the district court directed verdicts in favor of Town of Milton Officers Moriarty and Galvin and Town of Dedham Officers Dietenhofer and Tapsel. Willhauck's case continued against the two remaining defendants, MDC Officers Halpin and Perry. The jury returned a verdict in their favor.

### 3. Willhauck's Earlier Appeals of the District Court's Actions

Immediately after the verdict in favor of the defendants, Willhauck moved for a

---

**4.** Willhauck does not specifically challenge the dismissal Town of Dedham in this appeal, and the Town of Dedham did not participate in the current proceedings.

**5.** *See Willhauck v. Halpin*, 919 F.2d 788, 791 n. 8 (1st Cir.1990).

**6.** The court took no formal action on Dedham Officer Belmonte's motion to dismiss. He ap-

pears to have been dismissed, sub silentio, as a defendant by the time of trial, since no evidence was presented against him. Furthermore, in the defendant's Requests for Jury Instructions submitted after trial, Belmonte's name is struck through. *See Willhauck v. Halpin*, 919 F.2d 788, 791 n. 9 (1st Cir.1990).

judgment notwithstanding the verdict, and in the alternative for a new trial. A day before the district court responded to this motion, Willhauck filed a Notice of Appeal to this court of the denial of the motion. Although the district court did ultimately deny the motion, we dismissed the appeal because of Willhauck's failure to file his notice of appeal in the manner specified by Fed.R.App.P. 3(a) and 4(a)(4).[7]

At this point, in November of 1988, Willhauck sought by motion to have the district court issue an "Entry of Judgment on Certain Issues and Parties." In February of 1989, the district court denied this motion, and also denied Willhauck's motion for reconsideration.

On March 3, 1989, Willhauck appealed the district court's refusal to grant his motion of an entry of judgment. After reviewing the record, we determined that the district court's pretrial and directed verdict dismissals failed to satisfy the requirement of Fed.R.Civ.P. 58 that a "separate document" be entered in order to finalize an entry of judgment. *See Willhauck v. Halpin*, 919 F.2d 788, 793–94 (1st Cir.1990). We also found that these dismissals did not satisfy the requirement of Fed.R.Civ.P. 79(a) that judgments be entered in the district court's docket with a description of the "substance of each order or judgment of the court." *Id.* We concluded that except as to Officers Halpin and Perry, the district court had failed under Rules 58 and 79 to enter properly its judgments as to the other fourteen defendants. Lacking any indication that any of these rulings had been certified for immediate review under Fed.R.Civ.P. 54(b), we concluded that the time for appeal of the district court's rulings would not begin to run until the district court corrected its Rule 58 and 79 errors. *Id.* at 793–94. We vacated the district court's denial of Willhauck's motion for entry of judgment and remanded.

After our ruling, the district court held a hearing on Willhauck's motion for entry of judgment. On February 25, 1991, the court entered judgments dismissing the Willhaucks' action against the civic entities (Milton, Dedham, and the MDC); MDC Officers Callender, Huffam, and Mills; Dedham Officers Dietenhofer, Tapsel, and Belmonte; and Milton Officers Moriarty, Galvin and Rogers. On March 16, 1991, additional judgments were entered dismissing the action against Norfolk and Suffolk Counties. On April 10, 1991, Willhauck filed the appeal now before this court as to the merits of his § 1983 action. His Notice of Appeal attached entries of judgment covering all of the sixteen defendants named in his complaint.

## III. THE ISSUES ON APPEAL

In order to establish precisely which issues are now before us on appeal, we quote in its entirety Willhauck's "Statement of Issues" from his brief:

1. Did the district court err by holding that [Mass.Gen.Laws] ch. 90, sec. 25 authorized unlawful motor vehicle stops?

2. Did the district court err by holding that [Mass.Gen.Laws] ch. 90, sec. 25 authorizes motor vehicle stops by bluelighting?

3. Did the district court err by refusing to recognize that [Mass.Gen.Laws] ch. 90, sec. 25 authorizes motor vehicle stops in rudimentary traffic control situations only?

4. Did the district court err by preventing Willhauck [ ] from showing lack of reasonable suspicion to attempt to stop him in the first instance?

5. Did the district court err by preventing Willhauck [ ] from showing his right to resist the unlawful attempt to stop him?

6. Did the district court err by preventing Willhauck [ ] from putting into evidence [Mass.Gen.Laws] ch. 89, sec. 7B and the MDC and Milton motorized pursuit policies?

7. Did the district court err by dismissing the MDC and Town of Milton?

8. Did the district court err by dismissing plaintiff's nighttime intrusion claim?

---

7. *See Willhauck v. Halpin*, No. 87–2127 (1st Cir. Oct. 13, 1987).

9. Did the district court err by dismissing Willhauck[ ]'s constitutional challenge to [Mass.R.Crim.P.] 37(b)(2)?

Brief for Appellants at 1.

Besides noting the issues that Willhauck *has* raised on appeal, we also identify the issues that he has chosen *not* to appeal. We do so in order to comply with our

> settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.... It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.... "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."

*United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990) (citations omitted). *See also Ramos v. Roche Products, Inc.,* 936 F.2d 43, 51 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991) (brief must contain full statement of issues presented and accompanying arguments); *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 375 (1st Cir.1991) (mere mention, without supporting argumentation, that party seeks review of a district court's ruling insufficient to raise issue on appeal); *Brown v. Trustees of Boston University,* 891 F.2d 337, 353 (1st Cir.1989) (same).

As a threshold matter, then, we state the rulings and findings that Willhauck has waived through his failure to present them in his brief. Willhauck has waived appeal of the jury's August 1987 verdict in favor of MDC officers Halpin and Perry on the issue of liability for the alleged beating. He has waived appeal of the district court's

directed verdicts at the close of plaintiff's evidence in favor of the Milton and Dedham officers involved in the car chase— Officers Moriarty, Galvin, Dietenhofer and Tapsel. He has waived appeal of the October 1985 dismissals of the Milton and MDC officers involved in the alleged nighttime intrusion—Officers Rogers, Callender, Huffam and Mills. In addition, Willhauck has waived appeal of the dismissal of Norfolk and Suffolk Counties. The issues that Willhauck *has* decided to place before us for review can be grouped into the following general categories: A) the district court's rulings on the validity of his constitutional challenge to the operation of the section 25 "stop provision" (Issues 1, 2 & 3); B) the district court's rulings on his constitutional challenges to the operation of Mass.R.Crim.P. 37(b)(2) (Issue 9); C) the court's dismissal of the MDC and Town of Milton as defendants, along with Willhauck's underlying theories of municipal liability (Issues 7 & 8); and D) various other rulings by the district court both prior to and during trial preventing argument by Willhauck of alternative claims of deprivations of his constitutional rights (Issues 4, 5, 6 & 8).[8]

## IV. JURISDICTION

Before turning to the merits of Willhauck's claims, it is necessary to address the contention raised by the defendants-appellees MDC and its officers[9] that Willhauck's appeal is untimely as to certain defendants in this action. The MDC and its officers first claim that final judgments were entered by the district court on February 25, 1991, as to all the defendants dismissed prior to and during trial except Norfolk and Suffolk Counties, as to which final judgments were entered on March 16, 1991. Because Willhauck and his family did not file their notice of appeal until April

---

**8.** In summarizing Willhauck's arguments in this appeal, we have reviewed all the materials submitted to us by his attorney, including the proposed Addendum to Plaintiffs, Appellants' Reply Brief offered after oral argument. *See* Plaintiffs, Appellants' Motion to Reconsider Denial of Late Filing of Addendum to their Reply Brief (Nov. 2, 1991). We have also reviewed the letters submitted by counsel for Willhauck and

the MDC in response to our questions at oral argument regarding the provisions of Massachusetts law governing the use of blue lights on vehicles.

**9.** Officers Halpin, Perry, Callender, Huffam, and Mills.

10, 1991, the MDC and its officers argue that their appeal of the February 25th judgments is untimely since it exceeded by fourteen days the thirty-day deadline imposed by the Federal Rules of Appellate Procedure in civil cases. *See* Fed.R.App.P. 3(a) & 4(a). The MDC and its officers also argue that judgment as to Officers Halpin and Perry was entered by the district court after the jury's verdict in August of 1987. The MDC's contention here is that Willhauck's appeal is four years too late.

This court may only entertain appeals of "final decisions." *See* 28 U.S.C. § 1291. Whether a district court's entry of judgment as to a particular defendant or claim is "final" for purposes of appeal in a multi-defendant or multi-claim action is governed by Federal Rule 54(b), which provides in pertinent part:

> [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order ... which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims and all the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b). The overall purpose of Rule 54(b) is to create an exception to the longstanding prudential policy against piecemeal appeals—and to permit district courts to determine that parties should, in certain circumstances, be exempted from the burden of awaiting the final outcome of a multi-party or multi-claim case. *See, e.g., Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980); *Consolidated Rail Corp. v. Fore River Ry. Co.,* 861 F.2d 322, 324–25 (1st Cir.1988); *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 42–43 (1st Cir.1988); *Pahlavi v. Palandjian,* 744 F.2d 902, 903–904 (1st Cir.1984).

In order for a district court's resolution of a particular claim to qualify under Rule 54(b) as a separate, final judgment that may be appealed prior to the resolution of the case as a whole, a two-step process must be followed by the court. First, the court must make an "express direction for the entry of judgment" in conformity with Fed.R.Civ.P. 58 and 79(a), which require that the judgment be set forth as a separate document and that a corresponding entry be made in the court's docket. *See* 6 J. Moore et al., Moore's Federal Practice ¶ 54.41[1] (2d ed. 1991). Next, it must appear that the court has made an "express determination that there is no just reason for delay." By meeting these two requirements, the district court "certifies" an otherwise unappealable judgment for appeal to the circuit court. *Id.*

Willhauck takes the position that prior to the district court's entry of judgment on March 16th for Suffolk and Norfolk Counties, this action was not completely finalized for purposes of appeal. He argues that the judgments entered by the court on February 25th and in August of 1987 could not have been truly "final" judgments unless they were certified by the district court in conformity with Rule 54(b). Because the district court did not in either case provide an "express determination that there [was] no just cause for delay" of appeal of the February 25th and August 1987 judgments, Willhauck maintains that neither of these judgments were properly certified under 54(b). According to Willhauck, the thirty-day deadline for appeal could not have begun to run on *any* of the judgments entered by the district court until judgments were entered on March 16th as to the last remaining defendants in the case—Norfolk and Suffolk Counties.

We do not think that the district court intended to certify its judgments of August of 1987 and February 25th as Rule 54(b) final judgments pending the outcome of the rest of the litigation. The August 1987 judgment for Officers Halpin and Perry, entered after their jury trial, merely provides that "[i]n accordance with the verdict of the jury ... it is ORDERED: that judg-

ments for the defendants Paul Halpin and John Perry, be, and is hereby, entered."[10] As for the series of judgments entered on February 25th, it appears that the district court's objective was merely to correct its earlier failure, pointed out by this court, to observe the Rule 58 and 79(a) requirements that judgments be entered on a separate document and properly entered in the docket. The February 25th judgments, like that of August 1987, made no Rule 54(b) "express determination that there is no just reason for delay." In the absence of any statement of the district court's intentions to this effect, we agree with Willhauck and hold that these judgments were not entered in conformity with Rule 54(b).[11] The judgments of August 1987 and February 25th were therefore orders that merely "adjudicated fewer than all the claims or the rights and liabilities of fewer than all the parties." Consequently, this case was not ripe for review until the March 16th judgments were properly entered.

Such a result is in conformity with earlier decisions of this court construing the Federal Rules on judgments "fairly strictly," in order to avoid needless uncertainty as to the date of entry of judgment and the running of the time for appeal. *See, e.g., Willhauck v. Halpin,* 919 F.2d at 793 (citing *United States v. Indrelunas,* 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973)). While it is apparent that it was the intention of the district court on February 25th to resolve all outstanding procedural defects in its earlier judgments, we do not think it reasonable to make Willhauck bear the burden of the court's failure to carry out that task properly. To rule otherwise would be to encourage piecemeal and redundant appeals that the procedural requirements of Rule 54(b) are expressly designed to prevent. We are satisfied that Willhauck's appeal of the February 25th judgments is properly before us, and that

this appeal was timely in the aftermath of the court's March 16th judgments that finally concluded this case as to all the defendants.

■ It is unnecessary for us to address the question of whether the August 1987 judgment entered in favor of MDC Officers Halpin and Perry was appealed in a timely fashion. Willhauck has not presented as an issue in this appeal any challenge to the jury's verdict finding of no liability against Halpin and Perry. The issue of whether an appeal of that verdict was untimely is therefore moot.

## V. DISCUSSION

### A. *Constitutionality of the Massachusetts "Stop Provision"*

Willhauck's first set of arguments (Issues 1, 2 & 3 on appeal) advance the general proposition that Massachusetts's "stop provision" is unconstitutional because it authorizes the police to stop motor vehicles without reasonable suspicion. The "stop provision" provides in pertinent part that:

> [a]ny person who, while operating ... a motor vehicle, shall refuse, when requested by a police officer, to give his name ... or who shall refuse or neglect to stop when signalled to stop by any police officer who is in uniform or who displays his badge conspicuously on the outside of his outer coat or garment ... shall be punished by a fine....

Mass.Gen.Laws Ann. ch. 90, § 25 (West 1991). Willhauck points out that section 25 was drafted prior to the Supreme Court's cases requiring reasonable suspicion for automobile stops. He contends that the Massachusetts police use section 25 "at will" to carry out "unlawful" motor vehicle stops. Willhauck maintains that section 25 is both unconstitutional on its face and as applied to him during the attempts of Mil-

---

**10.** *See Willhauck v. Halpin,* 919 F.2d 788, 791 n. 11 (1st Cir.1990).

**11.** This circuit has not imposed a "rigid requirement on [a] district court to prepare a written statement in every case to justify its Rule 54(b) actions." *Pahlavi v. Palandjian,* 744 F.2d 902, 905 (1st Cir.1984). Rather, in order to promote

meaningful appellate review of the district court's exercise of its discretion under Rule 54(b), we have suggested that "it should ordinarily make specific findings setting forth the reasons for its order." *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 43 (1st Cir.1988).

ton and MDC officers to stop him on the night of the chase.[12]

Intermeshed with Willhauck's constitutional argument is a separate challenge to the propriety of the charges filed against him in both Norfolk and Suffolk Counties. Willhauck contends that Officers Moriarty and Halpin were without authority to stop him under the terms of section 25 itself, since Willhauck could not see that either officer was "in uniform." Furthermore, Willhauck claims, he was not obliged to stop for Moriarty and Halpin because they did not "display[ ] [their] badge[s] conspicuously" when they signalled Willhauck to stop with their blue lights and sirens. In sum, Willhauck's argument seems to be that Massachusetts police officers in general, and Officers Halpin and Moriarty in particular, lacked authority to attempt to stop him under section 25, and that the exercise of that authority violated the Fourth Amendment.

Taking Willhauck's arguments as an appeal of the district court's August 1984 dismissal of Willhauck's constitutional challenge to section 25, we review the district court's ruling *de novo*. *See Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1165 (1st Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 69, 116 L.Ed.2d 44 (1991). In considering Willhauck's facial challenge to section 25, the district court determined that the provision did not authorize stops that would be otherwise unconstitutional, but merely proscribed certain conduct by motor vehicle operators in Massachusetts. A facial challenge under § 1983 was inappropriate, the court reasoned, because it required the court to assume that all persons convicted under section 25 had been subjected to an illegal stop. It therefore dismissed Willhauck's facial challenge, noting that "as is the case with habeas corpus, a § 1983 suit challenging a criminal conviction is a peculiarly unsatisfactory means for attacking a statute on the grounds of facial unconstitu-

tionality." The court was careful to reserve the issue of whether Milton Officer Moriarty had reasonable suspicion to stop Willhauck.

 Section 1983 provides a federal remedy, cognizable in federal court, against state officials for conduct that violates federal rights, even if these officials' conduct is wholly unauthorized under state law. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *see also* H. Hart & H. Wechsler, The Federal Courts and the Federal System 1240 (3d ed. 1988). To bring an action under § 1983, a plaintiff must show both the existence of a federal constitutional or statutory right, and some deprivation of these federal rights as a result of official action. *See generally Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 105–108, 110 S.Ct. 444, 448–49, 107 L.Ed.2d 420 (1989); *Parratt v. Taylor*, 451 U.S. 527, 535–36, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). The focus in a § 1983 inquiry, then, is on the existence of official conduct alleged to have resulted in a deprivation of the plaintiff's federal rights.

To state a proper § 1983 claim, Willhauck needed to allege violations of his federal rights resulting from the conduct of the police officers involved in the car chase. Willhauck did so in his complaint to the extent that he alleged a violation of his Fourth and Fourteenth Amendment rights to be free from unreasonable seizures. The issue for § 1983 purposes was therefore whether any seizure of Willhauck occurred on the night of the car chase, and whether that seizure was reasonable.

Much of Willhauck's facial challenge to the constitutionality of section 25, however, does not relate to the issues material to a Fourth Amendment-based § 1983 claim— i.e., whether the officers actually stopped Willhauck's vehicle without reasonable suspicion. Instead, Willhauck's argument appears to be an attempt to attack the lawful-

---

**12.** At oral argument, counsel for Willhauck hinted—but did not unequivocally declare—that he had decided to abandon his facial challenge to section 25. The language of Willhauck's brief, however, suggests otherwise insofar as it claims that "police officers throughout the Com-

monwealth use section 25's stop-provision as authority to make any kind of stop, with or without reasonable suspicion, lawful or unlawful." Brief for Appellants at 13. We will therefore address the arguments as presented in the briefs.

ness of his 1980 conviction under section 25 in the Suffolk County proceedings initiated by MDC Officer Halpin. In addition, Willhauck's arguments as to whether he was able to see the badges and the uniforms of the officers attempting to stop him is a further attempt at a collateral attack on the legality of both state prosecutions against him.

While it is not entirely clear from the appendix submitted to us,[13] it appears that Willhauck may have challenged the constitutionality of section 25 in the course of the county prosecutions brought against him for his failure to stop. In the Suffolk County prosecution initiated by MDC Officers Halpin and Perry, Willhauck's brief states that following his failure to obtain consolidation of the Norfolk County prosecution, "the trial judge denied all motions to dismiss, to suppress and for directed verdict." Brief for Appellants at 9. Subsequently, after a jury trial, Willhauck was found guilty of a violation of section 25. We also note that in the Norfolk County prosecution that followed the Suffolk County verdict, Willhauck supplemented his motion to dismiss on double jeopardy grounds with the claim that section 25 was unconstitutional. Although the Dedham District Court rejected the section 25 claim, it ultimately granted the motion to dismiss on double jeopardy grounds.

■ We affirm the district court's dismissal of Willhauck's facial challenge to section 25, but on different grounds than those adverted to by the district court in its comments regarding the "unsatisfactory" nature of the § 1983 remedy for a challenge to a statute underlying a prior state court conviction.[14] In reviewing the district court's dismissal of a claim, we may, of course, affirm on any independently suf-

ficient ground. *See Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 7 (1st Cir.1990); *Chongris v. Board of Appeals,* 811 F.2d 36, 37 n. 1 (1st Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987). This is especially so where our review is *de novo.*

■ In this case, we think it apparent that Willhauck's arguments concerning section 25, to the extent that they were material to his claims of denial of his constitutional rights, had already been adjudicated in the Massachusetts courts prior to his federal action. Willhauck's section 25 arguments in this § 1983 action were an attempt to relitigate constitutional issues previously addressed by the Massachusetts court in his state prosecutions. In rearguing these claims, Willhauck transgressed the federalism principles expressly applicable to § 1983 actions under the doctrine of issue and claim preclusion.

■ It is well established that a federal court in a § 1983 action must give full preclusive effect to state court judgments adjudicating both issues and claims. *See Arecibo Radio Corp. v. Puerto Rico,* 825 F.2d 589, 591–92 (1st Cir.1987). *See also Cuesnongle v. Ramos,* 835 F.2d 1486, 1497 n. 8 (1st Cir.1987); *Cinelli v. City of Revere,* 820 F.2d 474, 479 (1st Cir.1987) (citing *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)); *Isaac v. Schwartz,* 706 F.2d 15, 16 (1st Cir.1983). The Supreme Court has held that under the federal full faith and credit statute,[15] federal courts in § 1983 actions must accord the same preclusive effect to state court judgments—both as to claims and issues previously adjudicated—as would be given in the state court system in which the federal court sits. *Migra v. Warren City School*

---

13. We attempted to obtain, *inter alia,* the transcript of the trial below, but were informed that no one, including the lawyers, knew where it was. Under Fed.R.App.P. 10(b) and 11, the appellant has the duty of ordering a transcript of those portions of the proceedings that the appellant deems necessary to present the issues which are the subject of the appeal.

14. While we depart from the district court's reasoning in the resolution of Willhauck's constitutional claim, we note that the district

court's underlying premise is fundamentally sound. It is well established in this circuit that "'the Civil Rights Act is not a vehicle for collateral attack upon final state court judgments....'" *Arecibo Radio Corp. v. Puerto Rico,* 825 F.2d 589, 592 (1st Cir.1987) (quoting *Bricker v. Crane,* 468 F.2d 1228, 1231 (1st Cir. 1972)).

15. 28 U.S.C. § 1738.

*Dist. Bd. of Education,* 465 U.S. 75, 83–84, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984). The Court has rejected the notion that in the § 1983 context, "distrust of state courts ... would justify a limitation on the preclusive effect of state judgments," and has instead stressed the need to accommodate "notions of comity, [and to] ... prevent vexatious litigation." *Migra,* 465 U.S. at 84, 104 S.Ct. at 898. Federal courts must therefore look to state law to determine whether a party to a § 1983 action will be barred from relitigating an issue previously presented in state court (issue preclusion), or from raising a claim that could have been presented in the state proceeding (claim preclusion). *Id.*

Under Massachusetts claim preclusion doctrine, a "prior adjudication on the merits operates as a bar to a later proceeding upon the same cause of action as to every issue that in fact was or in law might have been adjudicated." *Ratner v. Rockwood Sprinkler Co.,* 340 Mass. 773, 166 N.E.2d 694, 696 (1960). *See also Mackintosh v. Chambers,* 285 Mass. 594, 190 N.E. 38, 39 (1934); *Boyd v. Jamaica Plain Co–Operative Bank,* 7 Mass.App.Ct. 153, 386 N.E.2d 775, 781 (1979). This court recognized earlier that "Massachusetts courts apply [claim preclusion doctrine] in a perfectly traditional manner ... to prevent[ ] the relitigation of issues that 'were or could have been dealt with in an earlier litigation.'" *Isaac,* 706 F.2d at 16 (citations omitted). Massachusetts courts also apply the doctrine of issue preclusion in a traditional manner:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Martin v. Ring,* 401 Mass. 59, 514 N.E.2d 663, 664 (1987) (quoting *Fireside Motors, Inc. v. Nissan Motor Corp.,* 395 Mass. 366, 372, 479 N.E.2d 1386 (1985) (quoting Restatement (Second) of Judgments § 27 (1982))).

The record before us does not clearly establish whether Willhauck raised a constitutional challenge to the section 25 "stop provision." This, however, makes no difference to our analysis. Applying the principles of claim preclusion to Willhauck's Fourth Amendment arguments in this § 1983 action, we hold that Willhauck's Suffolk County prosecution afforded him the opportunity to present both his facial challenge to the constitutionality of the stop provision and an as-applied challenge to the conduct of MDC Officers Halpin and Perry. And, because it is possible that Willhauck *did* raise these constitutional arguments, we find in the alternative that reargument of these claims in this § 1983 action would have been barred by the doctrine of issue preclusion.

Under the Massachusetts Rules of Criminal Procedure, all defenses or objections based upon defects in the institution of the prosecution, other than lack of jurisdiction or failure to state a claim, must be raised by pretrial motion. *See* Mass.R.Crim.P. 13(c); H. Alperin, 14 Massachusetts Practice, Summary of Basic Law § 704 (Supp. 1991). In the Suffolk County prosecution, Willhauck was charged with a violation of section 25. If, as we assume, Willhauck did not raise his facial attack to section 25—or an as-applied challenge to the conduct of MDC Officer Halpin—in the course of that prosecution for violation of that statute, he was precluded from raising it subsequently in his § 1983 action under the doctrine of claim preclusion. As we observed in *Roy v. City of Augusta,* 712 F.2d 1517, 1521 (1st Cir.1983),

> "state courts, too, are guardians of the federal constitution." When a party should reasonably foresee that an adverse state court judgment will create a constitutional issue, that issue should be argued before the state court. Where it is not, the party is barred by principles of res judicata from later raising the constitutional claim against the same parties in a federal section 1983 action.

*Id.* (citations omitted).

On the other hand, if Willhauck *did* raise an unsuccessful attack on section 25 in the

Suffolk County prosecution, Willhauck's only recourse for an erroneous denial of his constitutional claims would have been to pursue the denial of his facial challenge through the state courts and then by writ of certiorari to the United States Supreme Court. Having unsuccessfully raised a Fourth Amendment challenge to prosecution under section 25, Willhauck would be collaterally estopped from relitigating the issue in a § 1983 action. *See Decker v. Hillsborough County Attorney's Office*, 845 F.2d 17, 20 (1st Cir.1988). If Willhauck did raise this challenge to section 25, the Suffolk County court's verdict and judgment operated as a valid and final judgment of an issue essential to his conviction under section 25.

Our conclusion that the Suffolk court judgment was a valid and final judgment for purposes of issue preclusion analysis is dictated by Willhauck's conduct of the appeal of that conviction. Willhauck's appeal of his Suffolk County conviction was denied on grounds of its lack of compliance with the Massachusetts Appellate Rules. Willhauck attributes this denial to Mass. R.Crim.P. 37(b)(2), which he asserts is unconstitutional. We address this claim in the following subsection of this opinion. That argument, however, is not pertinent to the issue of whether Willhauck fully pursued his opportunities for appeal in the Massachusetts courts. In the appendix submitted to us by Willhauck there is no evidence of any challenge to the clerk's denial of his attempt to appeal his Suffolk County conviction. We must infer from the record, and counsel's statement at oral argument, that the state court appeal was "in limbo," that Willhauck uncharacteristically chose not to pursue a state court appeal of his section 25 challenge, and that the Suffolk County court's determination was final.

Our conclusion that Willhauck failed to pursue his available remedies after the Suffolk County clerk's denial of his consolidated appeal is strengthened by a cursory review of the Massachusetts Rules of Appellate Procedure. Willhauck was convicted and sentenced in Suffolk Superior Court in October–November of 1980, but delayed his appeal of that conviction until after the dismissal of the Norfolk County charges in June of 1981. Willhauck's "Notice of Joint Appeal" was filed with both county clerks on July 9, 1981. Mass.R.App.P. 4 provides that appeals "shall be filed with the clerk of the lower court within thirty days...." We presume that this rule provided the basis for the Suffolk County clerk's statement that the appeal was "not in compliance" with the Appellate Rules.

The action of the Suffolk County clerk does not appear to us to have been entirely dispositive of Willhauck's attempted appeal. We note that Mass.R.App.P. 14(b) provides that an "appellate court or a single justice for good cause shown may upon motion [ ] enlarge the time prescribed by these rules ... [for up to] one year ... from the date of the verdict." Furthermore, we observe that Massachusetts law permits a single justice of the Massachusetts Supreme Judicial Court to grant an alternative remedy:

> The supreme judicial court shall have general superintendance of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue all writs and processes ... which may be necessary to the furtherance of justice and to the regular execution of the laws.

Mass.Gen.Laws Ann. ch. 211, § 3 (West 1989). *Cf. Commonwealth v. Lopes*, 21 Mass.App.Ct. 11, 483 N.E.2d 479, 483 (1985) (dictum noting availability of Rule 14(b) and ch. 211, § 3 remedies to petitioner whose criminal appeal is otherwise untimely); *Petition of Dist. Atty. for Plymouth Dist.*, 391 Mass. 723, 464 N.E.2d 62 (1984) ("211 petition" appropriate when relief is necessary to prevent a violation of substantive rights and irremediable error).

Willhauck made use of this so-called "211 Petition" in early phases of his double jeopardy litigation, see Brief for Appellants at 9, and so we can only assume that his failure to invoke the superintendency powers of the Supreme Judicial Court after the denial of appeal in Suffolk County was not inadvertent. This fact, in conjunction with

his failure to move for additional time under Rule 14(b), lead us to conclude that Willhauck had not adequately invoked his state law remedies. Under an issue preclusion analysis, then, dismissal of the section 25 would have been fully consistent with the principles of Massachusetts law applicable in this § 1983 case.

■ The district court's dismissal of Willhauck's facial challenge was proper, as was its decision to preserve an issue *not* fully adjudicated in the Massachusetts courts because of the double jeopardy bar to the Norfolk County prosecution—whether Milton Officer Moriarty had reasonable suspicion to attempt to stop Willhauck when he "blue-lighted" him. In sum, to the extent that Willhauck's section 25 arguments stated claims of a violation of constitutional rights cognizable in this § 1983 action,[16] Willhauck was precluded from making any of these claims—except his as-applied challenge to Officer Moriarty's conduct—after the Suffolk County adjudication.

B. *Dismissal of the Challenge to Mass. R.Crim.P. 37(b)(2)*

1. The Nature of the Constitutional Challenge

In its order of August 27, 1984 dismissing Willhauck's section 25 challenge, the district court also rejected Willhauck's constitutional arguments challenging Mass.

R.Crim.P. 37(b)(2) (Issue 9 on appeal). Willhauck challenges this dismissal, and urges that Rule 37(b)(2), "both on its face and as applied," violated his constitutional rights insofar as it permitted, *inter alia*, "duplicate and multiple criminal charges." Rule 37, which governs "Transfer for Trial," provides in pertinent part that:

> A judge, upon motion of a defendant ..., and after taking into account the convenience of the court, the parties, and their witnesses, may with the written approval of the prosecuting attorney in each division or county order the transfer and consolidation for trial of any or all charges pending against the defendant in the several divisions or counties of the Commonwealth.

Mass.R.Crim.P. 37(b)(2).

Willhauck's contention, in essence, is that the "prosecutorial veto" permitted by Rule 37(b)(2) exposed Willhauck and other Massachusetts criminal defendants to duplicative prosecutions in violation of the Double Jeopardy Clause. Both in his amended complaint and on this appeal, Willhauck attacks the conduct of the prosecutors in Norfolk and Suffolk Counties who denied his attempts at consolidation. Willhauck supplements his double jeopardy arguments with claims that the "unbridled discretion" permitted prosecutors under Rule 37(b)(2) is in violation of the Due Process and Equal Protection guarantees of the Fourteenth Amendment.[17]

---

**16.** Willhauck devoted a substantial portion of his oral argument and brief to the argument that Officers Halpin and Moriarty lacked authority to stop him under section 25 because, under the terms of the statute, an officer ordering a motorist to stop must be "in uniform" or "must display his badge conspicuously." Willhauck claims that it is not a sufficient "signal[ ] to stop" within the meaning of section 25 if a police officer flashes his blue lights at a motorist whom he wishes to stop. Willhauck thus believes that he was justified in refusing to stop for Officers Moriarty and Halpin, regardless of whether they had reasonable suspicion to order him to stop.

This argument is immaterial to the issue in this § 1983 action of whether a Fourth Amendment violation actually occurred in the course of the car chase. Furthermore, the argument is deeply flawed on its merits. Willhauck's argument depends on the proposition that flashing

blue lights do not sufficiently notify a motorist that he is being asked to stop by a police officer. We think this claim unreasonable, both as a matter of common sense and of Massachusetts law, which limits the use of blue lights on motor vehicles to the police and other authorized officials. Mass.Gen.Laws Ann. ch. 90, § 7E (West 1991). Furthermore, Willhauck's testimony that he refused to stop because he thought that he had done nothing "wrong" implicitly conceded that he realized that a police officer was trying to stop him.

**17.** Willhauck urges in the alternative that the prosecutorial veto permitted under Rule 37(b)(2) violates various Articles of the Declaration of Rights of the Massachusetts Constitution. His principal state constitutional claim appears to be that the prosecutorial veto violates the separation of powers implicit in Article 29's guarantee of an independent judiciary.

Willhauck directs similar constitutional arguments against the Suffolk County clerk's actions. He suggests that the clerk's refusal to accept his consolidated appeal was a similar abuse of discretion caused by the operation of Rule 37(b)(2). He maintains that any delay in filing an appeal of his Suffolk convictions was necessitated by his having to first secure dismissal of the Norfolk County prosecution. These "appellate procedural inconsistencies," Willhauck urges, violated his constitutional rights.

The district court dismissed Willhauck's constitutional challenge to Rule 37(b)(2). It concluded that Willhauck had failed to state a claim because jeopardy had never attached in his second state court prosecution in Norfolk County. Because of the order of dismissal by the Dedham District Court on double jeopardy grounds, the district court reasoned, there could have been no double jeopardy violation and therefore no constitutional violation for purposes of a § 1983 claim. The district court further observed that the doctrines of judicial and prosecutorial immunity would in any case bar Willhauck from monetary recovery against officials in the Massachusetts court system for the financial and emotional of costs of having to secure the second dismissal.

Our review of the dismissal of this challenge to Rule 37(b)(2) is *de novo*. *See Kale*, 924 F.2d at 1165. We think that the district court's analysis correctly identified the two distinct issues underlying Willhauck's challenge to Rule 37(b)(2): whether the use of this rule by the county prosecutors violated Willhauck's rights to be free from double jeopardy, and whether Rule 37, insofar as it forced Willhauck to undertake separate defenses and appeal of his actions on the night of the car chase, occasioned an inconvenience of sufficient magnitude to constitute a violation of Willhauck's due process and equal protection rights. Whether these issues are properly before us, however, is a different question

that requires further examination of the events leading up to this appeal.

2. Background to Willhauck's Challenge to Rule 37(b)(2)

Before considering the district court's dismissal of the constitutional challenges to Rule 37(b)(2), we think it appropriate to review the history of Willhauck's attacks on Rule 37(b)(2) in earlier proceedings. Such review helps properly frame Willhauck's appeal of this issue.

Although he was unable to obtain the consent of the Norfolk and Suffolk County prosecutors to consolidation of the prosecutions against him in Suffolk Superior Court, Willhauck nonetheless filed a consolidation motion. When that motion was denied because of the refusal of the prosecutors to give their consent, Willhauck petitioned the Massachusetts Supreme Judicial Court for relief from the Suffolk court's refusal to order consolidation.[18] A single Justice of the Massachusetts Supreme Judicial Court denied the petition. *See* Brief for Appellants at 9.

Because of his lack of success in the Massachusetts courts, Willhauck brought his first § 1983 action in August 1980 in an attempt to prevent the Suffolk County prosecution from going forward. At that time, Willhauck appears to have urged much the same double jeopardy arguments that he now raises against Rule 37(b)(2). In that first § 1983 action, which predated the instant § 1983 action by nearly three years, the remedies that Willhauck sought were purely equitable in nature—i.e. a TRO and preliminary and permanent injunctions barring the county prosecutors from proceeding against him. *See Willhauck v. Flanagan*, 448 U.S. at 1324, 101 S.Ct. at 11.

Willhauck's venture into the federal courts proved unsuccessful in preventing the two prosecutions from proceeding against him. The district court denied Willhauck's request for a TRO on *Younger* abstention grounds. *Id.* Willhauck moved in this court for a stay of the district

---

**18.** In so doing, Willhauck invoked the superintendency power of the Massachusetts Supreme

Judicial Court discussed in the previous subsection. *See* Mass.Gen.Laws ch. 211, § 3.

court's denial of the TRO, but we denied the motion. Next, Willhauck petitioned Justice Brennan for a stay pending resolution of an appeal of the district court's denial of the TRO in this court. Justice Brennan declined the application on the grounds that Willhauck's double jeopardy claims were premature. *Id.* at 1325, 101 S.Ct. at 11.

As a consequence of this denial, the Suffolk County prosecution went forward and resulted in Willhauck's conviction on the two misdemeanor charges. Eventually, Willhauck vindicated his double jeopardy claims in the Norfolk County prosecution by securing the dismissal of the charges against him in Dedham District Court in May of 1981. Thus, by the time Willhauck initiated the instant § 1983 action for damages, there was no need for the prospective relief he had originally sought while both county prosecutions were pending. Willhauck's complaint in the second § 1983 action reflected this change of events. In the new action, Willhauck sought damages for alleged deprivation of constitutional rights occasioned by the refusal of the prosecutors in both counties to allow consolidation under Mass.R.Crim.P. 37(b)(2). Apart from damages, the only alternative relief requested was a declaration of the unconstitutionality of Rule 37(b)(2).[19]

There was one major difference in Willhauck's new § 1983 action: only Norfolk and Suffolk Counties were named defendants. Where Willhauck had earlier sought injunctive relief directly against the county prosecutors about to proceed against him, Willhauck's complaint now focussed on constitutional violations alleged to have been committed by Suffolk and Norfolk Counties "through their respective Attorneys and under color of said Rule 37(b)(2)." Willhauck's request for a decla-

ration that Rule 37(b)(2) was unconstitutional appears to have been an attempt to restate in broader terms the allegations of unconstitutional conduct underlying his damages claim against the counties—i.e., that Norfolk and Suffolk County prosecutors had violated his double jeopardy and due process rights. Instead of injunctive relief against county prosecutors acting in their official capacity, Willhauck now sought damages against the counties themselves.

Some confusion appears to have arisen following this change in approach. The district court's dismissal of Willhauck's constitutional challenge to Rule 37(b)(2) indicates that Willhauck's arguments may have given the impression that he was suing the county prosecutors in their individual capacity for damages, even though these prosecutors were not named defendants.[20] This background helps makes sense of the district court's observations on the absolute immunity of prosecutors, which would otherwise have been completely inapposite to its ruling on the motion to dismiss Willhauck's challenge to Rule 37(b)(2). The nature of the relief originally sought by Willhauck in this action was damages against Norfolk and Suffolk Counties for their prosecutors' use of Rule 37(b)(2) and a declaration of the unconstitutionality of that Rule.

### 3. Willhauck's Claim On Appeal

Review of this procedural history makes it possible to render intelligible the current state of this claim as it now comes before us on appeal. The lack of clarity in Willhauck's Rule 37(b)(2) arguments in district court has persisted in his brief on appeal. This confusion is evident from the fact that Willhauck has chosen only to appeal the district court's denial of his challenge to

---

**19.** Willhauck's first § 1983 action, which was for all practical purposes moot, was consolidated with the instant § 1983 action. *See supra* note 3.

**20.** "Moreover, plaintiff's challenge to Rule 37(b)(2) is misdirected at the police officers who arrested him, rather than the judges and prosecutors who invoked the rule against him. To the extent plaintiff seeks monetary compensa-

tion for the financial and emotional cost of having the second set of charges dismissed, his claim, properly directed at the responsible officials, would be barred by the doctrines of judicial and prosecutorial immunity." Memorandum and Order.Dismissing Plaintiff's Challenges to Mass.Gen.L. ch. 90, § 25 and Mass.R.Crim.P. 37(b)(2).

the constitutionality of the rule. He has not raised as an issue on appeal the dismissal of Norfolk and Suffolk Counties as defendants in this action. What we are confronted with in Willhauck's brief is a rambling recitation of the alleged constitutional infirmity of Rule 37(b)(2) as it operates in Massachusetts.

The most direct manner of cutting through the procedural knots that have arisen in the course of the disposition of Willhauck's Rule 37(b)(2) arguments is to determine whether Willhauck stated a claim of constitutional deprivation under that Rule in the first place. It is axiomatic that in order to state a claim under § 1983, the plaintiff must make a showing that some conduct committed under color of state law has resulted in a deprivation of rights secured by the Constitution and laws of the United States. *See, e.g., Chongris,* 811 F.2d at 40 (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420). In reviewing the district court's dismissal of Willhauck's Rule 37(b)(2) claims, we must determine whether Willhauck properly alleged any deprivation of a constitutional right sufficient to support both a facial attack on the Rule and, as we must assume was Willhauck's original intention in suing the counties, claims for damages for that violation.[21]

 We agree with the district court that Willhauck failed to properly allege such a deprivation when he challenged the operation of Rule 37(b)(2) on double jeopardy grounds. Jeopardy only attaches in a jury trial after the jury is empaneled and sworn, or in the case of a bench trial, when the court begins to hear evidence. *See, e.g., Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). Here, Willhauck was successful in obtaining the dismissal of the Norfolk County charges on the strength of a double jeopardy claim—i.e., that prosecu-

tion in Norfolk County for his actions on the night of the car chase would necessitate charging him with identical (or lesser included) offenses to those for which he had already been convicted in Suffolk County. *See* Further Ruling on Defendant's Motion to Dismiss, *Massachusetts v. Willhauck,* No. 2872–5 Crim. (District Court Dept., Dedham Division, May 27, 1981). Consequently, jeopardy did not attach in Willhauck's second prosecution. Given his successful invocation of the protection of the Double Jeopardy Clause as a barrier to the Norfolk County prosecution, Willhauck could not claim in this § 1983 action that he had been placed in jeopardy for a second time in violation of his constitutional rights.

 We next turn to Willhauck's attack on the conduct of the Norfolk and Suffolk County prosecutors who refused his request for consolidation of the prosecutions arising from the car chase. Willhauck's attack on the operation of Rule 37(b)(2) intimates bad faith and an abuse of discretion on the part of these prosecutors because they forced him to mount a defense in two separate jurisdictions. To the extent that Willhauck's allegations identify a constitutional claim, we think it based on some of the same concerns of due process and equal protection underlying the Supreme Court's cases on selective and vindictive prosecution.

In several different contexts, the Supreme Court has observed that prosecutorial discretion is "'subject to constitutional restraints.'" *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (citations omitted). The Court has held that it is a violation of due process when a defendant, as a result of the exercise of his rights to attack his conviction, is subsequently subjected to more severe sentencing after retrial, or reindictment on a more severe charge. *See*

---

**21.** In undertaking this inquiry, it is necessary to observe that we do not consider Willhauck's due process challenge to Rule 37(b)(2) to have been barred by the doctrines of claim or issue preclusion. Willhauck clearly raised the due process issue in his petition for extraordinary relief of June 1980 under Mass.Gen.L. ch. 211, § 3 (the "211" petition). After review of the ambiguous appendix in this appeal, however, we are less certain than in the context of Willhauck's challenge to section 25 that principles of issue and claim preclusion could have been properly invoked by the district court as a basis for dismissing the Rule 37(b)(2) challenge.

*Bordenkircher v. Hayes,* 434 U.S. 357, 362, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978) (citing *North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969), and *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974)). In these cases, the Court applied the same underlying principle: that it is a violation of due process for a prosecutor or judge, out of vindictiveness, to attempt to penalize a defendant in the exercise of his legal rights. *See Bordenkircher,* 434 U.S. at 363, 98 S.Ct. at 668. Furthermore, the Court has acknowledged that prosecutorial discretion in the decision whether to prosecute is subject to the constraints of the Equal Protection Clause: "the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Wayte,* 470 U.S. at 608, 105 S.Ct. at 1531 (citations omitted). Claims of selective prosecution are judged according to ordinary equal protection standards. *Id.*

Under any conceivable approach derived from these cases, however, we think that Willhauck's allegations in this § 1983 action failed to state a claim of a violation of his constitutional rights.[22] To establish a claim of vindictive prosecution, there must either be allegations of actual vindictiveness or of circumstances showing a sufficient likelihood of vindictiveness by a prosecutor. *See United States v. Garcia–Rosa,* 876 F.2d 209, 232 (1st Cir.1989); *United States v. Marrapese,* 826 F.2d 145, 147 (1st Cir.1987) (citing *United States v. Goodwin,* 457 U.S. 368, 376–80, 102 S.Ct. 2485, 2490–92, 73 L.Ed.2d 74 (1982)). In his complaint, Willhauck never suggested that the decision of the Norfolk and Suffolk County prosecutors to refuse to allow the consolidation of the prosecutions against him was motivated by vindictiveness. Because Willhauck's claims of "harassment" were directed at the burden placed on him by the operation of Rule 37(b)(2), and not on any allegation of a vindictive purpose motivating the prosecutors who applied this Rule, there could have been no claim of vindictive prosecution.

Any claim of selective prosecution that might have inhered in Willhauck's argument that his equal protection rights were violated by the operation of Rule 37(b)(2) was also without proper support. Ordinarily, a claim of selective prosecution requires a showing that the challenged decision to prosecute had "a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte,* 470 U.S. at 608, 105 S.Ct. at 1531. In this circuit, we

---

**22.** It is necessary to observe that our discussion of the availability of a § 1983 action based on allegations of abuse of prosecutorial discretion is tempered by the knowledge that such an action could, as a practical matter, rarely occur. An allegation that selective or vindictive prosecution has occurred in violation of due process should ordinarily be raised as a defense to such a prosecution. Once such prosecution had begun, a § 1983 action for injunctive relief to prevent the alleged violation of the due process rights of a state defendant would be barred. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). After the termination of the state proceedings, the Eleventh Amendment would bar damages actions for such a violation against a state officials acting in their official capacity. *See, e.g., Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Similarly, a § 1983 action brought after the fact for damages against prosecutors in their individual capacity would, as the district court correctly observed, be barred by the doctrine of prosecutorial immunity. *See Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 995–96, 47 L.Ed.2d 128 (1976) (prosecutors enjoy absolute immunity against damages actions under § 1983 for activities in their quasi-judicial capacity).

Thus, the only conceivable scenario in which a § 1983 action challenging vindictive or selective prosecution might be permissible would be a suit for declaratory and injunctive relief to prevent unconstitutional action by state officials. In the instant case, as Justice Brennan observed, there are thorny questions as to the interplay of *Younger* abstention doctrine in any consideration of Willhauck's repeated attempts to challenge the constitutionality of Rule 37(b)(2) at various stages of the Norfolk and Suffolk County prosecutions. *See Willhauck v. Flanagan,* 448 U.S. at 1325, 101 S.Ct. at 11. We will assume for purposes of discussion that prior to commencement of the Norfolk and Suffolk County prosecutions, Willhauck might have stated a § 1983 claim for injunctive relief by alleging a due process violation in the announced intention of these prosecutors to frustrate any future attempt at consolidation.

have consistently required that such a claim be supported by a showing that the decision to prosecute was an intentional form of discrimination against the defendant. *See United States v. Michaud,* 860 F.2d 495, 499–500 (1st Cir.1988); *Hernandez v. Commissioner,* 819 F.2d 1212, 1225–27 (1st Cir.1987), *aff'd,* 490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). It must be shown that others similarly situated have not been prosecuted and that the decision to prosecute has been motivated by an impermissible reason. *Michaud,* 860 F.2d at 499–500 (citations omitted).

Willhauck, however, offered only a bald assertion that his Equal Protection rights had been violated, and in his brief on this appeal is able only to observe that Rule 37(b)(2) operates to create different "classes" of defendants—those whose offenses cross county lines, and those that do not. It is sufficient to observe that Willhauck's complaint, which was not supported by allegations of discriminatory intent by the county prosecutors, failed to even approach the bare minimum for a claim of a violation of his equal protection rights.

■ As for Willhauck's attack on the refusal of the Suffolk County clerk to accept his appeal on grounds of untimeliness, we see no merit in his suggestion that this refusal violated his procedural due process rights. Because Willhauck has not in any way demonstrated how such a refusal deprived him of any further rights to appeal, and where it is apparent that he failed to pursue his state law remedies for that denial, we think his claims of a deprivation of constitutional rights unfounded. There was, therefore, no constitutional claim in this aspect of his case sufficient to support a § 1983 claim attacking the operation of Rule 37(b)(2).

In sum, where there was no showing of a violation of Willhauck's constitutional rights, the district court's dismissal of Will-

hauck's challenges to Rule 37(b)(2) was appropriate—regardless of whether these claims were actually intended to effectuate declaratory relief or damages against the counties and their prosecutors.[23] It was unnecessary for the district court to reach issues of prosecutorial immunity, insofar as Willhauck's challenge to Rule 37(b)(2) did not embrace a damages claim against the Norfolk and Suffolk County prosecutors in their individual capacity. Furthermore, because there was no valid federal claim underlying Willhauck's § 1983 action, dismissal by the district court of his Massachusetts constitutional challenges to Rule 37(b)(2) would have been appropriate. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### C. *Dismissals of the Town Of Milton and MDC*

With the dismissal of Willhauck's challenges to Rule 37(b)(2)'s "prosecutorial veto" and the section 25 "stop provision," the district court eliminated those aspects of his complaint that sought relief of a purely declaratory nature. What remained were damages claims against the MDC, Town of Milton, Norfolk and Suffolk Counties, and the various police officers named as defendants in their individual capacity for their conduct during the car chase and nighttime intrusion.

In August of 1984, on the same day as its order dismissing the constitutional challenges to Rule 37(b)(2) and section 25's "stop provision," the district court also dismissed the case against the MDC. The court ruled that the MDC was an agent of the Commonwealth of Massachusetts and was as such immune from suit for damages under the Eleventh Amendment.

Four months later, on December 12, 1984, the district court also dismissed the case against the Town of Milton by rejecting three separate theories of municipal liability. First, the court determined that Willhauck had failed to adequately allege a

---

**23.** Thus, it is unnecessary for us to determine whether the county prosecutors named in their individual capacity in Willhauck's first § 1983 action became defendants in this § 1983 action after the consolidation of the two cases. Furthermore, Willhauck's failure to raise as an issue in this appeal the dismissal of Norfolk and Suffolk Counties renders any remaining issues moot.

claim of inadequate training and supervision sufficient to support municipal liability against the Town of Milton. Second, the court found that Willhauck failed to state claims of constitutional magnitude by alleging that his due process rights had been violated by the Town of Milton's failure to investigate his allegations of police brutality. Third, the district court found baseless Willhauck's claims that his Fourth Amendment rights had been violated by the town's practice of allowing the execution of arrest warrants at night. *See Willhauck v. Halpin*, 599 F.Supp. at 283.

■ Willhauck challenges both dismissals (Issues 7 & 8 on appeal). As to the dismissal of the MDC, Willhauck insists that the district court acted precipitously in finding as a matter of law that the MDC was an agent of the Commonwealth of Massachusetts entitled to Eleventh Amendment immunity. Willhauck contends that there should have been further factual inquiry into the question of whether a damages award against the MDC would flow from the state treasury. As for the dismissal of his three claims against the Town of Milton, Willhauck appeals only the dismissal of the claim of inadequate police training and supervision arising from the events surrounding the night of the car chase.

Turning first to the dismissal of the MDC on Eleventh Amendment grounds, we are unconvinced by the district court's ruling that the MDC is an agent of the Commonwealth of Massachusetts. We have repeatedly recognized that the determination of whether a public agency or institution is entitled to Eleventh Amendment immunity—as an "arm of the state"—is necessarily factually based. *See Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of Puerto Rico*, 818 F.2d 1034, 1038 (1st Cir. 1987) ("The decision whether a state insti-

tution or entity is an arm of the State ... should not be made without a full examination of all the factors [bearing on the issue of state control]."). *See also Puerto Rico Ports Authority v. M/V MANHATTAN PRINCE*, 897 F.2d 1, 9 (1st Cir.1990); *Blake v. Kline*, 612 F.2d 718, 723 (3rd Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980).

■ Ordinarily, the next step in our *de novo* review would be to determine whether Willhauck properly alleged claims of municipal liability against the Town of Milton. Because of the district court's erroneous ruling as to the MDC's immunity from suit, we would also have attempted to determine whether the theories of municipal liability alleged against the Town of Milton stated proper claims against the MDC.[24] We would have had to ascertain whether Willhauck properly stated a § 1983 claim against the MDC where he maintained that 1) the alleged beating evidenced inadequate municipal supervision of police conduct, and 2) that the nighttime intrusion indicated the existence of an unconstitutional municipal custom of nighttime service of arrest warrants. *Cf. Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir.), *cert. denied*, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989) (outlining standards for proof theories of inadequate municipal training or supervision and unconstitutional municipal custom). We would review Willhauck's factual averments as true and construe them in the light most favorable to him. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989). We would then determine whether valid claims had been stated against Milton and the MDC under either of Willhauck's *Monell*-based theories.

24. We recognize that the immunity afforded States under the Eleventh Amendment is jurisdictional in nature. *See Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of Puerto Rico*, 818 F.2d 1034, 1036 (1st Cir.1987) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)). In other words, if it were established that the MDC was an arm of the Commonwealth of Massachusetts, it would follow that we would lack jurisdiction to consider the merits of Willhauck's claims for damages against the MDC based on *Monell*-based principles of municipal liability. Since, however, we do not decide the Eleventh Amendment issue, but merely assume for purposes of discussion that such immunity does not apply, it would be permissible for us to undertake an analysis of the merits of Willhauck's municipal liability claims.

Given the posture of this case on appeal, however, such an inquiry is unnecessary. Willhauck has not raised as an issue on appeal the grant of directed verdicts for Milton Officers Moriarty and Galvin and Dedham Officers Dietenhofer and Tapsel. Nor has he challenged the jury verdict finding MDC Officers Halpin and Perry not liable. Willhauck's failure to challenge these determinations on appeal means that we are bound by the findings below that there were no violations of Willhauck's constitutional rights by any of the police officers involved in the car chase and alleged beating. It follows ineluctably that where there are no constitutional violations by municipal employees there can be no claim of inadequate supervision or training against a municipal employer. *See City of Canton*, 489 U.S. 378, 385–87, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) ("a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."). Willhauck's claims against Milton or the MDC under an inadequate municipal supervision theory are therefore moot.[25]

Willhauck has also not appealed the trial court's findings as to the individual officers involved in the nighttime intrusion. Specifically, Willhauck has not challenged the district court's October 1985 rulings dismissing MDC Officers Callender, Huffam and Mills from the case and granting summary judgment to Milton Officer Rogers. Here too we are bound by the district court's findings that no violations of Willhauck's constitutional rights occurred in the course of the nighttime service of the arrest warrant. Consequently, any claims against Milton or the MDC based on an allegation of unconstitutional municipal custom are also moot.

## D. Dismissal of the "Nighttime Intrusion" Claim

Willhauck devotes a separate section of his brief to the argument that the nighttime intrusion constituted a deprivation of his Fourth Amendment rights (Issue 8 on appeal). Willhauck attacks, in general terms, the dismissal of this "claim," although it is not explained as to which defendants Willhauck believes this unspecified "dismissal" to have been erroneously made. Although not clear from his brief, Willhauck's arguments appear to be another version of his challenge to the district court's dismissal of his unconstitutional municipal custom claim based on the nighttime intrusion against the Town of Milton, and, implicitly, the MDC. Willhauck's only reference to the district court's dismissal of non-municipal defendants is his assertion that the district court "misconstrue[d] the law" at the hearing in October of 1985 in

---

**25.** While it is unnecessary for us to review the rulings of the district court, we wish to disapprove expressly the grounds for the court's dismissal of the inadequate municipal supervision claim against Milton. The court found that "allegations of a single instance of brutality do not support a claim of inadequate training unless the beating was 'unusually brutal or egregious'" and that "[e]ven if proved, the failure of the Milton officers to prevent a single unnecessary blow by a fellow officer is not so egregious as to permit an inference of gross negligence on the part of the city officials." *Willhauck*, 599 F.Supp. at 282 (citations omitted). Insofar as the district court's dismissal of Willhauck's inadequate supervision claim relied in part on the assumption that the events of the night of the car chase were a "single incident," we think the court misstated the principles governing municipal liability. While these principles may not have been clear at the time of the district court's ruling in 1984, we have subsequently stated that:

 [w]hile it is true that a single event alone cannot establish a municipal custom or poli-

cy, ... where other evidence of the policy has been presented and the "single incident" in question involves the concerted action of a large contingent of individual municipal employees, the event itself provides some proof of the existence of the underlying policy or custom.

*Bordanaro v. McLeod*, 871 F.2d 1151, 1156–57 (1st Cir.), *cert. denied*, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989) (citations omitted). A claim of inadequate supervision cannot be precluded as a matter of law because only a "single instance" of brutality is alleged: "it can not be that an incident that is single only in that it begins and ends within a confined period of time can never give rise to a finding of municipal liability." *Kibbe v. City of Springfield*, 777 F.2d 801, 806 n. 4 (1st Cir.1985), *cert. dismissed*, 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987). *See also Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir.1989) ("municipal liability is not precluded simply because the events occurred in a 'single evening.'").

which the MDC and Milton Officers involved in the nighttime intrusion were dismissed as defendants in the action.

We conclude that Willhauck has focussed this argument exclusively against the dismissals of the Town of Milton and MDC. We base this assumption on the fact that the brief specifically cites the district court's ruling dismissing the Fourth Amendment claim against the Town of Milton. Furthermore, the brief refers to the "MDC's and Milton's nighttime intrusion of the Willhauck home" and the "lack of responsible policy and supervision by Milton and the MDC."

It is unnecessary for us to review the merits of his Fourth Amendment arguments concerning the nighttime intrusion, for the reasons discussed in the previous subsection. We do not read Willhauck's oblique reference to the October dismissals, standing alone, as a challenge to the dismissal of the action against the MDC and Milton officers involved in the nighttime intrusion. *Cf. Zannino*, 895 F.2d at 17 ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Because Willhauck has waived any appeal of the findings of a lack of liability against the individual officers involved in the nighttime intrusion, it is unnecessary for us to explore his attempts to restate his municipal liability theories.

E. *The District Court's Conduct of the Trial*

Willhauck's last set of arguments center on certain of the district court's rulings prior to and during the trial of the remaining six police officer defendants. Willhauck's general contention is that these rulings amounted to a deprivation of his "due process" rights.

1. Refusal to Allow Argument on the "Unlawful Attempt to Stop"

Willhauck first argues that he was deprived of a fair trial because of the district court's failure to allow him to argue that Milton Officer Moriarty lacked reasonable suspicion to attempt to stop him at the inception of the car chase. In dismissing Willhauck's constitutional challenge to the section 25 "stop provision," the district court left open the purely factual issue of whether Officer Moriarty had reasonable suspicion to stop Willhauck. On the first day of trial, however, the district court disallowed any argument by Willhauck that Moriarty lacked reasonable suspicion to initiate the attempted stop when he turned on his blue lights. The court reasoned that regardless of whether the *attempted* stop by Moriarty was reasonable, the fact that Willhauck had subsequently chosen to flee at speeds vastly in excess of posted limits became a "superseding" cause requiring the police chase, stop and arrest of Willhauck. The court thus observed that

> any separate claim because of Officer Moriarty's having an inadequate basis for signaling the plaintiff to stop is so technical and insubstantial in the circumstances of this case as not to amount to a separate cause of action. To have a cause of action, there must be a basis for a damage claim, and the damages received by the plaintiff can in no way be attributed to his failure to stop when Officer Moriarty signaled by blinking his blue lights.... [T]he plaintiff's having decided to ... flee at a high rate of speed was at law surely a superseding cause in terms of the damages that were received. So had he stopped, there would have been no damage.... Any other consequence is purely speculative. So there are not in this case separate claims to be submitted to the jury on the theories of false arrest and a Fourth Amendment violation....

Appendix at 25. The district court therefore precluded all of Willhauck's arguments that suggested that police had "provoked" him into speeding off to avoid the deprivation of his constitutional rights that would have resulted from his stopping after Moriarty turned on his blue lights.

Willhauck now attacks the district court's rulings, claiming that the court deprived him of a fair trial when it deprived him of any opportunity to argue the unlawfulness of Moriarty's initial attempt to stop

him (Issues 4 & 5 on appeal). Because Moriarty lacked reasonable suspicion to stop him at the moment he first turned on his blue lights, Willhauck contends, any ensuing reasonableness generated by Willhauck's flight would amount to a form of "bootstrapping." Willhauck argues that since Moriarty had no reasonable suspicion to attempt to stop him in the first place, Willhauck became entitled to exercise his "citizen's right to self-defense—a right to resist an unreasonable seizure." Willhauck believes he should have been allowed to argue his theory of a "right to resist," as well as to receive a jury instruction on this "justification" theory.

▇▇▇ These contentions are completely without merit. A Fourth Amendment seizure does not occur when a police officer turns on his blue lights and thereby signals the driver of a vehicle to pull over. For a seizure to occur, there must be "an acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct. 1378, 1381–82, 103 L.Ed.2d 628 (1989). In *Brower*, the Court determined that a seizure for Fourth Amendment purposes occurred when a petitioner who was leading police officers on a high speed chase crashed into a police roadblock. The Court reasoned that a seizure takes place

> only when there is a governmental termination of freedom of movement *through means intentionally applied....* The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and stopped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

*Id.* at 596–97, 109 S.Ct. at 1380–81 (emphasis in original). Implicit in the Court's reasoning is the concept that a seizure does not occur where the suspect being signalled by the police does not stop his vehicle. *Cf. United States v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985) ("stopping a car and detaining its occupants constitute a seizure within the meaning of the Fourth Amendment...."). The fact that Willhauck was able to drive away from Officer Moriarty at speeds approaching eighty miles an hour belie any assertion that any seizure occurred that terminated Willhauck's "freedom of movement." Here, because Willhauck never stopped his vehicle when signalled by Officer Moriarty, there could have been no Fourth Amendment violation predicated on Moriarty's alleged lack of suspicion to "blue light" Willhauck's vehicle. We therefore affirm the district court's refusal to allow Willhauck to present this claim.[26] Because we find that no Fourth Amendment violation occurred, it is unnecessary for us to examine the merits of Willhauck's contentions regarding the dimensions of a "right to resist" an unconstitutional seizure.

2. Refusal to Allow Pursuit Policies Into Evidence

▇▇▇ Willhauck's next attack focusses on the refusal of the district court to allow evidence concerning the pursuit policies of the MDC and Town of Milton, as well as provisions of Massachusetts law governing police conduct during an emergency pursuit. *See* Mass.Gen.Laws Ann. ch. 89, § 7B (West 1990). These policies, in conjunction with section 7B, establish the general principle that police officers should conduct the pursuit of a suspect in such a manner as to avoid endangering the public. Willhauck challenges the district court's re-

---

**26.** We feel it necessary to observe that the district court's suggestion that the absence of damages resulting from a constitutional violation would bar the underlying § 1983 action is not quite accurate. If Willhauck *had* stopped, and if it were shown that Officer Moriarty had lacked reasonable suspicion to make that stop, nominal damages might have been available under § 1983. *See Maldonado Santiago v. Velazquez Garcia*, 821 F.2d 822, 829 (1st Cir.1987) (constitutional injury, if proven, entitles § 1983 plaintiff to nominal damages from any liable party); *Melear v. Spears*, 862 F.2d 1177, 1186–87 (5th Cir.1989) (§ 1983 plaintiff entitled to at least nominal damages for violation of absolute right to be free from unconstitutional searches).

fusal to allow these policies into evidence to support his claim that the officers pursuing him on the night of the car chase "ignored their departmental pursuit policies" (Issue 6 on appeal).

Willhauck also claims that the district court erred because it refused to allow the testimony of an expert on "police matters including pursuit policies." This expert would have demonstrated how the conduct of the MDC and Milton officers violated their established pursuit policies. Willhauck believes that this testimony, in conjunction with the pursuit policies, would have constituted "pertinent evidence of police responsibility" for causing the chase. Furthermore, he argues that such evidence would show "deficiencies in both departments in controlling the pursuit."

We review a district court's ruling on the admission of evidence and expert testimony under an abuse of discretion standard. *See, e.g., Belber v. Lipson*, 905 F.2d 549, 551 (1st Cir.1990); *Forrestal v. Magendantz*, 848 F.2d 303, 305–06 (1st Cir. 1988). Here, we find that given the posture of the case at the time of trial, the evidence adverted to by Willhauck would have been immaterial. We are unable to see how violation of police pursuit policies would have been material to Willhauck's claims in this § 1983 action that his constitutional rights were violated by the police. The manner in which the police attempted to stop Willhauck in the course of the car chase is not pertinent to the issue of whether after the stop Willhauck's constitutional rights were violated by MDC and Milton officers. Furthermore, Willhauck's vague assertions that the conduct of the police during the chase goes to the issue of police "responsibility" are simply newly-clothed versions of the argument the district court properly rejected—that the attempt to stop Willhauck was unlawful from its inception.

Our review of the record in this appeal has included all the materials submitted by Willhauck, including the proposed Addendum to Plaintiffs, Appellants' Reply Brief submitted after oral argument.

## CONCLUSION

The judgments of the district court are AFFIRMED. Costs awarded to the appellees.