COMMONWEALTH *vs.* ROBERT LOPES.

Barnstable. September 9, 1985. — October 1, 1985.

Present: GREANEY, C.J., GRANT, & FINE, JJ.

*Jury and Jurors. Constitutional Law,* Jury, Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Presence of defendant, Appeal.

The judge in a criminal case properly denied the defendant's motion for a new trial claiming ineffective assistance of counsel based on defense counsel's failure adequately to present the issue of substantial underrepresentation of blacks and Cape Verdeans in the jury venire, where the defendant failed to provide any evidence of the racial or ethnic composition of the entire venire from which the fourteen white jurors who sat on the case, as well as three white veniremen who were excused, had been selected. [14-15]

A criminal defendant's absence from the bench conference at which the question of possible underrepresentation of blacks and Cape Verdeans in the jury venire was first raised was, in the circumstances, of no consequence. [15-16]

The judge in a criminal case had no authority to allow the defendant to appeal from his convictions some two years after the entry of judgment. [16]

INDICTMENTS found and returned in the Superior Court Department on June 11, 1981.

The cases were tried before *Augustus F. Wagner, Jr.,* and a motion for a new trial was heard by him.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Douglas K. Sheff,* Legal Assistant to the District Attorney, for the Commonwealth.

GRANT, J. On October 16, 1981, the defendant was convicted by a Superior Court jury in Barnstable County on separate indictments charging him with violations of G. L. c. 266, §§ 18 and 20. He did not appeal at that time. On October 6,

1983, the trial judge, acting at the request of the defendant, purported to enlarge the time within which the defendant could file a notice of appeal from his convictions. On November 15, 1984, the defendant, represented by appointed counsel, filed a motion for a new trial (subsequently amended) which, after opportunity for a hearing, was denied by the trial judge on January 29, 1985. The untimely appeal from the convictions and a timely appeal from the order denying the motion for a new trial have been consolidated in this court for purposes of briefing and argument.

1. Three questions are presented. We consider first so much of the motion for a new trial as asserted that the defendant, who is black and of Cape Verdean descent, was deprived of the "judgment of his peers" within the meaning of art. 12 of the Massachusetts Declaration of Rights and that that deprivation resulted from the ineffective assistance of his trial counsel within the meaning of art. 12 and the Sixth Amendment of the Constitution of the United States.

The jury were selected on the first day of trial from the first eighteen veniremen called by the clerk. One venireman did not answer when her name was called. The Commonwealth exercised one peremptory challenge, and the defendant exercised two such challenges. All the challenges were of white people, and all fourteen of the veniremen who were sworn as jurors were white. At the outset of the second day, before any evidence was taken, counsel for the defendant advised the judge at the bench as follows: "My client just informed me of something. I don't understand it, he referred to it as a jury of appearance, which I don't understand, but apparently he is upset that there are no blacks on this jury. I would like to explain that we did discuss this with my client yesterday and I said there is nothing to indicate to me that any black people were purposely being excluded from this jury. I don't know if there were any." The judge was not asked to, nor did he, take any action. He specifically noted that he had been given no information concerning the racial or other composition of the venire as a whole ("I have no idea of any checks of what the cross section was of the venire . . .").

The motion for a new trial asserts that the absence from the jury of any blacks or people of Cape Verdean descent "was the result of a nonrandom jury selection system likely to result in systematic discrimination against . . . persons of the black race and color and persons of Cape Verdean national origin."[1] Submitted with the motion were copies of portions of the 1980 United States Census from which it appears that 1.21% of the total population of Barnstable County were black and 0.76% were of Cape Verdean descent. The defendant submitted an affidavit of an investigator employed by him in which it was asserted that one or more of the nonrandom selection processes disapproved in *Commonwealth* v. *Aponte*, 391 Mass. 494, 499-501, 503, 509 (1984), had been employed in five of the fifteen towns in Barnstable County from which the petit jury veniremen had been summoned during the applicable period.[2]

Also submitted was a motion for leave to make inquiry, in such manner as the court might direct, of all members of the petit jury venires who had been summoned for the sittings of the Superior Court in Barnstable County during the period from October, 1979, through and including October, 1981, as to their respective racial and ethnic identifications for the purpose of determining whether blacks or persons of Cape Verdean descent had been systematically underrepresented in the venires.[3] It does not appear that a hearing was ever requested on this motion or that it was ever brought to the attention of any judge. We do know that it was not brought to the attention of the trial judge when the motion for a new trial was called for hearing before him; all that occurred on that occasion was that both counsel submitted the motion for a new trial without argument of any kind. No action was taken on the discovery motion; the motion for a new trial was summarily denied without any findings of fact or explanation.

---

[1] The defendant tells us in his brief that "[i]n this instance, the racial group subsumes the national origin group."

[2] According to the 1980 census, those five towns included 39.46% of the total population of the county and 48.39% of the total black population of the county.

[3] See *Commonwealth* v. *Aponte*, 391 Mass. at 497.

We shall assume, for the purposes of this opinion, that a defendant, by claiming ineffective assistance of trial counsel, can, by a motion for a new trial, raise a question of possible underrepresentation in a jury venire of a particular race or group of which he is a member. See *Commonwealth* v. *Pope*, 392 Mass. 493, 498-500 (1984). If so, he must show more than that there was no member of his race or group on the jury that convicted him. *Commonwealth* v. *Soares*, 377 Mass. 461, 481, cert. denied, 444 U.S. 881 (1979). He has the burden of establishing that the employment of one or more nonrandom bases of selection resulted in a substantially disproportionate underrepresentation of his race or group in the venire from which his jurors were drawn. *Commonwealth* v. *Bastarache*, 382 Mass. 86, 96 (1980). *Commonwealth* v. *Aponte*, 391 Mass. at 504-505, 506. *Commonwealth* v. *Szczuka*, 391 Mass. 666, 671 (1984). *Commonwealth* v. *Pope*, 392 Mass. at 499.

There was a failure of such proof at the threshold of this case for the reason that the defendant never provided any evidence of the racial or ethnic composition of the entire venire from which his jurors were drawn. We know that the fourteen jurors who sat on this case, as well as the three veniremen who were challenged, were white, but, as was the case with the trial judge when the question was first raised with him, we know nothing of the racial or ethnic backgrounds of any of the other veniremen.[4] Indeed, for all that appears, the venire as a whole may have reflected percentages of blacks and Cape Verdeans well in excess of the percentages of blacks (1.21%) and Cape Verdeans (0.76%) in the population of the county as a whole, and the fact that all the members of the defendant's jury were white may have been nothing more than happenstance. In short, the defendant failed to establish a prima facie case of systematic discrimination under the decided cases. See, e.g., *Commonwealth* v. *Bastarache*, 382 Mass. at 96-97;

---

[4] Nor do we know the size of the venire, which had to be large enough to meet not only the needs of the Superior Court jury sessions in Barnstable County but also the needs of the jury-of-six sessions of the District Court conducted in the county. See G. L. c. 218, § 27A (*b*) and (*f*), as appearing in St. 1978, c. 478, § 189.

*Commonwealth* v. *Aponte*, 391 Mass. at 496, 501-503. He has also failed to establish a prima facie case for relief within Mass.R.Crim.P. 30(c) (3) and (4), 378 Mass. 901 (1979). See *Commonwealth* v. *Stewart*, 383 Mass. 253, 257-258, 261 (1981); *Commonwealth* v. *Dalton*, 385 Mass. 190, 194 & n.3 (1982); *Commonwealth* v. *Nicholson*, 20 Mass. App. Ct. 9, 11 n.1 (1985).[5]

It follows that the defendant has failed to demonstrate ineffective assistance on the part of trial counsel because he has not shown that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). Compare *Commonwealth* v. *Pope*, 392 Mass. at 500. Accordingly, so much of the motion for a new trial as was addressed to the question of possible underrepresentation of blacks or Cape Verdeans on the defendant's jury was properly denied.

2. The defendant also claims error in the denial of so much of his motion for a new trial as bemoans the fact that he was absent from the bench conference at which the question of possible underrepresentation of blacks was first raised. See *Commonwealth* v. *Robichaud*, 358 Mass. 300, 301-303 (1970); *Commonwealth* v. *Curry*, 368 Mass. 195, 199-202 (1975); *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 397-400 (1975); *Commonwealth* v. *Connor*, 392 Mass. 838, 843 n.1 (1984); Mass.R.Crim.P. 18(a), 378 Mass. 887 (1979). He neglects to point out that he did not request to be present and that the judge did not exclude him from the conference. We

---

[5] We have already pointed out that the defendant did not press his posttrial discovery motion with respect to the racial and ethnic composition of the venire. He tells us in his brief that he was barrred by what was said in *Commonwealth* v. *Fidler*, 377 Mass. 192, 202 (1979), from making pertinent inquiries as to the composition of the venire without prior leave of court. He is wrong in this because there is nothing in the *Fidler* case or in any of its progeny which forbids postverdict interrogation by counsel of veniremen who were not sworn as jurors in the particular case. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 155, cert. denied, 457 U.S. 1137 (1982); *Cassamasse* v. *J. G. Lamotte & Son*, 391 Mass. 315, 318-319 (1984); *Commonwealth* v. *Dixon*, 395 Mass. 149, 153 (1985); Greaney, Juror Impeachment and Post-Verdict Interrogation of Jurors, 64 Mass. L. Rev. 85, 87 (1979).

need not dwell on the fact that no objection was raised below (see *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 [1967]) because it should be clear from what has already been said in part 1 of this opinion that the defendant would have had nothing to contribute had he been expressly invited to join the discussion.

3. We have now considered all the questions which have been argued in the defendant's brief. A question of procedure remains. The judge in this case, whether out of solicitude for the rights of the defendant or to avoid any appearance of reluctance to suffer appellate scrutiny of his actions, purported to allow the defendant to claim an appeal from his convictions well beyond the sixty-day period within which he was empowered to act under Mass.R.A.P. 4(c), as appearing in 378 Mass. 924 (1979), and well beyond the one-year period within which a single justice of either appellate court could have acted under Mass.R.A.P. 14(b), as appearing in 378 Mass. 924 (1979). See *Giacobbe* v. *First Coolidge Corp.*, 367 Mass. 309, 317 (1975). The action of the trial judge was a nullity. *Correira* v. *Ben David*, 5 Mass. App. Ct. 772, 773 (1977). It may be that a single justice of the Supreme Judicial Court, acting under G. L. c. 211, § 3, and upon a showing of a meritorious case, can allow an appeal to be taken beyond the one-year period (see *Miranda* v. *Commonwealth*, 392 Mass. 420, 421-422 & n.1 [1984]), but neither a trial judge nor a single justice of this court has any authority under § 3. See *Fadden* v. *Commonwealth*, 376 Mass. 604, 608 (1978), cert. denied, 440 U.S. 961 (1979); *Cassidy* v. *Commissioner of Environmental Management*, 7 Mass. App. Ct. 898, 898-899 (1979); *Ott* v. *Preferred Truck Leasing, Inc.*, 9 Mass. App. Ct. 875, 876 (1980).

The order denying the motion for a new trial is affirmed; the appeal from the convictions is dismissed.

*So ordered.*