## COMMONWEALTH *vs.* MANLIO TOLENTINO.

Essex. March 7, 1996. - April 22, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Jury and Jurors. Constitutional Law,* Jury. *Practice, Criminal,* Jury and jurors.

In a criminal proceeding in which the defendant moved to dismiss the jury venire as failing to represent the Hispanic composition of the county from which it was drawn, the judge correctly denied the motion where the defendant did not meet his burden of demonstrating that Hispanics were underrepresented in relation to their proportion of the total population of the community [519-521] or that any underrepresentation of Hispanics was a result of their systematic exclusion in the jury selection process [521-522].

COMPLAINT received and sworn to in the Salem Division of the District Court Department on June 9, 1993.

On transfer to the jury session of the Peabody Division, a motion to dismiss the jury venire was heard by *Robert E. Hayes,* J., and the case was tried before him.

The Supreme Judicial Court granted an application for direct appellate review.

*Charles K. Stephenson* (*Raymond Buso* with him) for the defendant.

*Anne J. Sperry,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. The Beverly police obtained a complaint in the Salem Division of the District Court Department alleging that the defendant, Manlio Tolentino, an Hispanic man, had been in possession of cocaine with intent to distribute, see G. L. c. 94C, § 32A (1994 ed.), and that the offense was committed within 1,000 feet of a school, see G. L. c. 94C, § 32J (1992 ed.).[1] After preliminary proceedings, the complaint was

---

[1]Counts in the complaint alleging the same offenses but as to heroin were nol prossed by the Commonwealth.

transferred to the Peabody District Court for trial before a jury of six. Before the trial, the defendant moved to dismiss the jury venire as failing to represent the ethnic composition of Essex County. The motion was denied, and members of that venire were seated as the jury.

After trial, the jury returned guilty verdicts on both counts of the complaint, and the defendant was sentenced. The defendant appealed to the Appeals Court, raising as the sole issue the denial of his motion to dismiss the jury venire. We granted the defendant's application for direct appellate review. We conclude that the motion properly was denied, and affirm the defendant's convictions.

The background facts having to do with the challenge to the composition of the venire are as follows. At the outset of the jury selection procedure, "based upon [his] observations of the jury pool," the defendant's trial counsel filed a motion to dismiss the venire brought to the courtroom for his trial, which was composed of "twelve or thirteen" people, all of whom appeared (in the opinion both of the defendant's trial counsel and the trial judge) to be "caucasian." The motion was supported by an affidavit of counsel, in which he stated, in pertinent part, that:

> "[1] I have tried in excess of one hundred jury cases in this county during [the last ten years] the vast majority of those being in Salem and Peabody courts. . . .

> "[2] I have also taught in numerous continuing legal education programs within the county and conferred with dozens of other criminal trial lawyers in this county regarding their experiences regarding the representation or underrepresentation of minorities in the jury pools in this county.

> "[3] I have lived in Essex County for most of the last ten years and have worked in Lynn, Salem and Lawrence courts for significant periods of time.

> "[4] As a result of the above I am familiar with the community make-up of towns including Salem, Lynn and Lawrence all of which have substantial minority population of blacks and Hispanics.

"[5] In my experience in the last several years jury empanelments in this county I have personally participated in selection of juries with more than two thousand persons who were part of the panels.

"[6] During this time to the best of my memory and belief I have only on two occasions ever seen either blacks or Hispanics seated on one of my juries.

"[7] The vast majority of all cases that I have been involved in have had ordinarily no minorities of black or Hispanic origin in the panel, and I have never seen more than two in my memory even when the panel was in excess of sixty-five persons.

"[8] I am personally aware that in Lynn and Lawrence minority population of blacks and Hispanic[s] exceeds fifteen percent of the population and according to information provided to me by other local attorney[s] could be as high as thirty percent.

"[9] I have confirmed my observations that as a result it appears that black and Hispanic minorities are seldom if ever seated on juries and only rarely seen in jury pools with other experienced members of the trial bar in this county who have similar experiences.

"[10] I have personally made investigation of the United States census bureau who have provided me with the following information regarding minority population in the County of Essex, that according to the most recent census information:

"a. the total population of Essex County is 670,080 and

"b. the Hispanic portion of the population within this county is 48,440, thus providing 7.2 percent of the total county population. . . .

"[11] I have been provided with information from a survey conducted of the most active trial lawyers representing defendants in Essex County. This research

entailed contacting all member[s] of the [Committee for Public Counsel Services] Superior Court list advocates in Essex county via both written and oral communication regarding their experiences in minority representation in jury cases in this county. According to this research Hispanic jurors constitute less than 1% of Essex County jury venires, despite the fact that 7.2% of the population is Hispanic."

The defendant's trial counsel also represented that he had made contact with the office of jury commissioner, and that all juror questionnaires and follow-up telephone calls were exclusively in English. The affidavit also incorporated by reference portions of the 1994 report prepared under the auspices of this court by the Commission to Study Racial and Ethnic Bias in the Courts (commission). The commission's report, entitled Equal Justice: Eliminating the Barriers (report), discusses the racial and ethnic composition of jury venires in Suffolk, Worcester and Hampden Counties, and concludes that in Suffolk and Hampden Counties, minority groups are underrepresented in jury venires in relation to their population in those counties.

The judge inquired whether the defendant intended to present any evidence on the motion beyond the affidavit, and, although the defendant's trial counsel responded in the affirmative, no such evidence was offered or discussed. The Commonwealth presented no conflicting material and the judge made no express findings in denying the motion to dismiss. Represented by new counsel on appeal, the defendant argues that the denial of the motion deprived him of his right, guaranteed by the Sixth Amendment to the United States Constitution, and art. 12 of the Declaration of Rights of the Massachusetts Constitution, to a trial before a jury selected from a fair cross section of his community.

1. In support of his challenge to the entire venire, the defendant asserts that Hispanics, a recognizable and distinct group, see *Commonwealth* v. *Bastarache*, 382 Mass. 86, 96 (1980), are generally, and were in his case, substantially underrepresented in the venires in Essex County from which petit juries are drawn. To establish a prima facie case of un-

constitutional jury selection under the Sixth Amendment,[2] the defendant was required to demonstrate that "(1) the group allegedly discriminated against is a 'distinctive' group in the community, (2) that the group is not fairly and reasonably represented in the venires in relation to its proportion of the community, and (3) that underrepresentation is due to systematic exclusion of the group in the jury selection process." *Id.* at 96-97. See *Duren* v. *Missouri*, 439 U.S. 357, 364, 366-367 (1979). The Commonwealth contends, we conclude correctly, that the defendant has failed to make an adequate showing on the second and third prongs of his prima facie case.

The Commonwealth does not dispute that Hispanics are a "distinctive" group for the purpose of the defendant's motion. See *Commonwealth* v. *Aponte*, 391 Mass. 494 (1984). See also *United States* v. *Pion*, 25 F.3d 18, 22-23 (1st Cir.), cert. denied, 115 S. Ct. 326 (1994). In other critical respects, however, the affidavit of the defendant's trial counsel failed to meet the standards required for proof of a prima facie case of unconstitutional jury selection. The affidavit failed to establish that Hispanics are not fairly represented in Essex County venires in proportion to their numbers in the community. While we might be willing to accept the Federal 1990 census figure as sufficient to establish the Hispanic population in Essex County in 1995, see, however, *Commonwealth* v. *Colon*, 408 Mass. 419, 437 (1990), the affidavit presented to the judge by the defendant appears to assume that the entire Hispanic population of Essex County would be eligible for jury service. In this respect, the defendant ignores the fact that some undetermined percentage of the population in question would be ineligible because its members were under the age of eighteen

---

[2]The defendant also relies on art. 12 of the Massachusetts Declaration of Rights as a basis for his motion to dismiss. We need not consider his claim under art. 12 separately, because he does not advance any suggestion that art. 12 might provide relief unavailable under the Sixth Amendment. We note, however, that the protections afforded by art. 12 are not necessarily coextensive with those afforded by the Sixth Amendment. See *Smith* v. *Commonwealth*, 420 Mass. 291, 295 n.6 (1995); *Commonwealth* v. *Soares*, 377 Mass. 461, 478, 479 & n.17, cert. denied, 444 U.S. 881 (1979).

years, or for other reasons.[3] See, e.g., *Commonwealth* v. *Leitz-sey*, 421 Mass. 694, 699 & n.4 (1996). The defendant's motion thus failed to establish, to a reasonable degree of certainty, what percentage of the Essex County population of persons eligible for jury service was Hispanic. Contrast *Commonwealth* v. *Aponte, supra* at 496 (indicating that approximately 1.98% of 1980 *adult* population of Essex County was Hispanic).

The motion, as presented, relied primarily on the jury venire brought to the courtroom for the defendant's trial (at twelve to thirteen persons which is obviously an unacceptably small sample for the purpose of any statistical showing of underrepresentation), and the motion provided no information at all about the racial and ethnic makeup of the entire venire that had been summoned for jury service on the day of his trial. See *Commonwealth* v. *Lopes*, 21 Mass. App. Ct. 11, 14 (1985). The defendant's trial counsel also relied, to a significant extent, on his visual observation as the basis for concluding that the venire from which the defendant's jury ultimately was chosen contained no Hispanic persons. This court has observed that visual observations alone are not a reliable guide to the true makeup of a jury venire. See *Commonwealth* v. *Colon, supra* at 438 n.11; *Commonwealth* v. *Peters*, 372 Mass. 319, 322 (1977).

The motion also lacked reliable data, which might have bolstered the defendant's assertion, on the ordinary and regular composition of jury venires in Essex County. The anecdotal and subjective data contained in the affidavit on the composition of those jury venires in Essex County, based on

---

[3]Undoubtedly, additional members of any distinctive group in the population would be disqualified from jury service for other reasons set out in the provisions of G. L. c. 234A, § 4 (1994 ed.). Other statutory grounds for disqualification include optional disqualification for a person over seventy years of age, G. L. c. 234A, § 4 (2); inability to speak or understand English, G. L. c. 234A, § 4 (3); incapacity to serve due to physical or mental disability, G. L. c. 234A, § 4 (4); sole responsibility for the daily care of a disabled person, G. L. c. 234A, § 4 (5); prolonged absence from the judicial district, G. L. c. 234A, § 4 (6); incarceration or conviction of a felony within the past seven years, G. L. c. 234A, § 4 (7); or service on a State or Federal grand or petit jury within the last three years, G. L. c. 234A, § 4 (8). Because the office of jury commissioner does not request data on race or ethnicity on the juror confirmation forms returned by prospective jurors, it would be unreasonable to expect a defendant to estimate the number of persons from a discrete group who might be disqualified on these grounds.

defense counsel's observations during the last ten years,[4] does not provide an adequate basis for any conclusion concerning the actual percentage of Hispanic persons who might be available in Essex County for jury service. See *Commonwealth* v. *Colon, supra* at 438 (rejecting anecdotal, visual assessment of minority representation in jury venires as insufficient to establish statistically significant disparity of representation). The commission's report recommends that the office of jury commissioner request information on juror confirmation forms concerning membership in a racial or ethnic minority. Report, *supra* at 69.[5] We agree with the defendant that the failure to request this data presents a barrier to a defendant seeking to present to a judge comprehensive and reliable data on minority representation in the jury venires of a particular county. Nonetheless, to make out a prima facie case of underrepresentation, a defendant can and must do more than visually assess a small subsection of the venire present on a particular day. Cf. *Commonwealth* v. *Aponte, supra* at 497 & n.7 (defendant's trial counsel mailed questionnaires to 328 individuals summoned to serve on grand jury; a statistician testified that total lack of Hispanic representation in this group was statistically significant).

In addition to these shortcomings, the affidavit of the defendant's trial counsel did not establish that any possible underrepresentation of Hispanics in his jury venire was due to systematic exclusion. In support of this point, the defendant relies entirely on the report of the commission, which concludes that there are deficiencies in the compilation of the

----

[4]The affidavit filed by the defendant's trial counsel also referred to a survey compiled by a group of criminal defense attorneys in Essex County which concluded, according to the affidavit, that Hispanic jurors constituted less than one per cent of Essex County jury venires. It does not appear from the record that counsel furnished a copy of the survey to the judge.

The survey, which formed the basis for a defense motion to strike a jury venire in a group of consolidated cases, was the subject of a careful analysis by a judge in the Superior Court, who held an evidentiary hearing on the motion. After considering the data in the survey and hearing testimony from the jury commissioner, the judge concluded that the defendants had failed to make out a prima facie case of systematic exclusion of Hispanics from the jury venires in Essex County.

[5]It appears that such data is collected by the United States District Court for the District of Massachusetts on persons selected for jury duty in that court, at least as to the eastern division of the court. See *United States* v. *Pion*, 25 F.3d 18, 23 (1st Cir.), cert. denied, 115 S. Ct. 326 (1994).

jury pools in Suffolk and Hampden Counties, but contains no information on Essex County. For reasons explained in the margin, the commission's report does not support an inference that members of minority groups are systematically underrepresented in jury venires in Essex County.[6] In sum, the anecdotal information contained in the affidavit of the defendant's trial counsel was not sufficient to meet the defendant's burden with respect to the issue of underrepresentation of the Hispanic population in jury venires in Essex County. A motion of this type needs careful and detailed documentation, and what was presented here did not meet the threshold proof required for a viable claim.[7] The judge properly denied the motion to dismiss.[8]

[6]Nor does the report support an inference that the deficiencies identified by the commission in Suffolk and Hampden Counties are present in every county in the Commonwealth. The commission also studied the composition of the jury venires in Worcester County for a period of six months. According to the report, "The census indicated that Worcester County's population was 93.8% white, 4.6% Hispanic, 2.1% black, and 1.6% Asian. The jury pool's composition was 95.4% white, 4.5% Hispanic, 2.1% black, and 1.5% Asian." Equal Justice: Eliminating the Barriers, Commission to Study Racial and Ethnic Bias in the Courts 64 (1994). Discrepancies in the representation of various ethnic groups in the Worcester County venires in the Superior Court, would appear, in the absence of expert testimony to the contrary, to be statistically insignificant. The commission's report does not warrant an inference that all counties in the Commonwealth are similarly situated in regard to the composition of their jury pools.

[7]The Commonwealth was not required to present evidence to rebut the defendant's claim until the defendant had made a sufficient showing of impermissible underrepresentation or exclusion. As has been discussed, the defendant did not make such a showing.

[8]To the extent that the defendant contends that juror questionnaires which are written only in English constitute a constitutional violation, his claim fails because art. 12, and the Sixth Amendment, do not prohibit the requirement that jurors be able to speak and understand English. See *Commonwealth* v. *Acen*, 396 Mass. 472, 478, 479, appeal dismissed, 476 U.S. 1155 (1986) (non-English speaking persons do not form a distinct or protected group deserving of protection under art. 12 or the Sixth Amendment). See also *Commonwealth* v. *Brito*, 402 Mass. 761, 766 (1988) (rejecting Federal and State constitutional claims that juror notification forms prejudice non-English speaking people); G. L. c. 234A, § 4 (disqualifying those who cannot speak or understand English). "It is unquestionable that an ability to speak English is a relevant and important qualification for jurors." *Commonwealth* v. *Acen*, *supra* at 479. "The courts that have considered the problem have found that the requirement that conduct of judicial affairs be in English is both reasonable and important." *Id.* at 480, and cases cited.

2. Despite the defendant's failure to make an adequate preliminary showing that his constitutional right to a jury selected from a fair cross section of the community had been abridged, the case raises concerns. The right to a representative jury is a fundamental one, and we have been diligent in enforcing this right under both the Federal and State Constitutions. While the commission's report cannot serve as a substitute for adequate support of a defendant's motion to dismiss, it does not negate totally the possibility that jury venires in Essex County, along with the venires in some other counties in the Commonwealth, do not adequately reflect the racial and ethnic composition of the county populations.

Essex County employs the "one-day, one-trial" system established in G. L. c. 234A (1994 ed.), which we have stated "contains no element of subjectivity," and "has much to commend it for its assurance of randomness in the selection process."[9] *Commonwealth* v. *Colon, supra* at 438. The jurors reporting to the Peabody District Court for the defendant's trial, and other trials that day, were summoned under this system. However, even a process of random selection cannot completely ensure a jury pool that reflects the community's composition, if the basic data from which the selection is

---

[9]In 1982, the Legislature enacted G. L. c. 234A, as appearing in St. 1982, c. 298, § 1, establishing a detailed framework for jury selection designed to assure that all persons selected for jury service "shall be selected at random" and "shall have equal opportunity to be considered for juror service." G. L. c. 234A, § 3. Moreover, "[n]o person shall be exempted or excluded from serving as a . . . trial juror because of race, color, . . .[or] national origin . . . ." G. L. c. 234A, § 3. The provision became applicable to Essex County on January 1, 1984. G. L. c. 234A, § 1. See *Commonwealth* v. *Aponte,* 391 Mass. 494, 510 n.22 (1984).

Under G. L. c. 234A, § 4, "any citizen of the United States who is a resident of the judicial district or who lives within the judicial district more than fifty per cent of the time" shall be qualified to serve as a trial juror unless one of the eight grounds for disqualification applies. G. L. c. 234A, § 4. The statute also describes the procedures by which jurors are to be selected: by June 1, of each year, each city and town in the judicial district shall compile and submit to the office of jury commissioner a list of residents age seventeen years and older; by July 1, of each year, the office of jury commissioner must determine the total number of prospective jurors to be drawn from each city and town in the judicial district in proportion to that municipality's percentage of the district's total population; the office of jury commissioner must then follow a statutory formula to ensure the random selection of the required number of jurors from each city or town in the district. G. L. c. 234A, §§ 10-16.

made fails to reflect, with some degree of accuracy, that composition.

It has not been suggested that the underrepresentation identified by the commission resulted from intentional discrimination. This court has said, however, that in the case of minority underrepresentation in jury venires, "we would not be concerned solely with whether the discrimination was intentional because even unintentional discrimination against [a minority group] would raise a constitutional question." *Commonwealth* v. *Bastarache*, 382 Mass. 86, 101 (1980). Both the defendant's trial and appellate counsel have pointed out that the commission's report found that certain infirmities in some counties hamper the ability of the office of jury commissioner to produce a representative jury pool. The commission noted that in many respects, the present systems of municipal census collection, however suited to counties with stable populations and insignificant minority populations, may result in underrepresentation of Hispanic persons and other minorities in counties with large urban populations. Report, *supra* at 60-64. The commission, referring to its Suffolk County study, suggested that municipalities' lax practices in obtaining proper mailing addresses and following up on nonresponding households are a significant factor in underrepresentation of minority residents in the census tables from which jury pools are ultimately drawn. *Id.* at 57, 60, 69. Inaccuracies in memorializing mailing addresses compound minority underrepresentation by causing a high percentage of undeliverable jury summonses in certain urban neighborhoods. It is possible that proof of deficiencies like these, in the case of a particular county, might be judged to amount to an unintentional but systematic and identifiable exclusion of a distinctive group from the jury lists of that county. See *Commonwealth* v. *Bastarache, supra* at 102.

The underrepresentation of an identifiable distinctive group among jurors may well be both a cause and an effect of distrust of the judicial system, as well an infringement of the constitutional rights of a particular individual facing trial by what should be a jury of peers. For these reasons, the office of jury commissioner should act diligently, to the extent of available resources, to implement the commission's recommendations for addressing the problems with jury selection identi-

fied by the commission.[10] Many of the recommendations made by the commission concern the role of municipalities in the process of selecting prospective jurors, and implementation of those recommendations will require the cooperation of municipalities, and, in some cases, action by the Legislature or the Attorney General. At the same time district attorneys and judges should remain alert to the problem and lend their support to all reasonable efforts to obtain adequately representative juries as a whole, and in particular cases. This court believes that such actions are essential to "increas[ing] confidence in the jury system [and] enhanc[ing] the appearance [and the reality] of fairness" in our trial system. *Commonwealth* v. *Bastarache, supra* at 103.

*Judgment affirmed.*

---

[10]The commission recommended the following:

"The Office of Jury Commissioner should continue its efforts to press for the enforcement of the law that requires each city and town to provide an accurate resident list for the compilation of jury pools.

"The Office of Jury Commissioner should recommend to the Massachusetts Legislature that it amend G. L. c. 234A, § 10 to require that towns and cities request mailing addresses.

"The Office of Jury Commissioner should establish specific policies and procedures for collecting and maintaining statistical data on the race, ethnicity, gender and age of those who report for jury duty and those who actually serve on panels. An annual report of these findings should be issued.

"The Office of Jury Commissioner should contact those individuals who fail to report for jury duty and inform them of their legal obligation to serve and press for enforcement of the law against those who refuse."

Report, *supra* at 69.