COMMONWEALTH *VS.* ANGEL SERRANO
(and two companion cases[1]).

No. 97-P-1942.

Essex. June 22, 1999. - October 28, 1999.

Present: GREENBERG, GILLERMAN, & RAPOZA, JJ.

*Jury and Jurors. Constitutional Law,* Jury. *Practice, Criminal,* Jury and jurors, Challenge to jurors, Indictment. *"School Zone" Statute.*

In the circumstances of a criminal case, the prosecutor's peremptory challenge of the only African-American member of the venire was not improper. [164-166]

A criminal defendant did not establish, in moving to dismiss the venire, any adequate basis for concluding either that the composition of the venire in his case was not representative of the community or that the jury service selection process was discriminatory; the motion to dismiss was correctly denied. [166-167]

At the trial of a criminal case, the judge did not err in allowing the Commonwealth's motion to amend an indictment alleging violation of G. L. c. 94C, § 32J, unlawful distribution of cocaine within a school zone, to refer to "clause (4)" rather than "clause (1)" of "paragraph (a) of Class B of Chapter 94C, section 31," where the defendant was on notice that cocaine was the substance alleged and the defendant demonstrated no prejudice. [167-168]

INDICTMENTS found and returned in the Superior Court Department on March 22, 1995.

The cases were tried before *Charles M. Grabau,* J.

*Peter M. Onek,* Committee for Public Counsel Services (*Jane M. Moynihan* with him) for the defendants.

*Douglas H. Wilkins,* Special Assistant Attorney General, for the Commonwealth.

GREENBERG, J. Three Hispanic men were jointly tried and convicted by a jury of the Superior Court of various drug

---

[1]Commonwealth *vs.* Rafael Martínez; Commonwealth *vs.* Jonathan Omar Nunez.

distribution charges. One of the common errors they assign on appeal is that the government improperly exercised one of its peremptory challenges to exclude the only potential black juror, thereby depriving them of a representative jury.

1. *Jury impanelment.*[2] On the second day of the impanelment process, the prosecutor used a peremptory challenge to strike an African-American man (juror X) from the venire. The defendant Serrano's trial counsel objected and asked the judge to adduce a race-neutral reason for the challenge. He argued that this particular juror was the only African-American member on the venire, and one of only four minority jurors remaining (the other three were Hispanic). A lengthy colloquy followed. It began with the judge asking the prosecutor the reason she sought to remove juror X as a potential juror in the case. The prosecutor explained that absent a pattern of challenging minority members of the venire, she was not required to provide any reason for the challenge. Satisfied that there was, in fact, no such pattern, the judge did not press the prosecutor for a race-neutral reason but cautioned the prosecutor that if she challenged any more minority jurors, she would have to provide a race-neutral rationale. The impanelment concluded with no further contested challenges and, in the end, three of the twelve jurors impaneled were Hispanic.

We start with the proposition that "a peremptory challenge may not be exercised either by the Commonwealth or by the defense to exclude a juror solely on grounds of that juror's race." *Commonwealth* v. *Curtiss*, 424 Mass. 78, 83 (1997) (Fried, J., dissenting). However, the analysis of whether a trial judge's acceptance or rejection of peremptory challenges deprives defendants of their constitutional right to be tried by an impartial jury, as guaranteed by arts. 12 and 15 of the Declaration of Rights of the Massachusetts Constitution, begins with the presumption that the challenge is proper. *Commonwealth* v. *Soares*, 377 Mass. 461, 489, cert. denied, 444 U.S. 881 (1979). That presumption may be rebutted by showing that there exists a pattern of conduct whereby individuals from a discrete group have been challenged and by showing that exclusion of the individuals is based on their membership in that class of persons. See *id.* at 489-490. A pattern of racially

---

[2]In view of our disposition of the issue, it is unnecessary to determine whether or not defendants Nunez and Martinez preserved their right to review with respect to this claim. We shall assume, without deciding, that they did.

motivated peremptory challenges may be established by even a single improper challenge. See *Commonwealth* v. *Harris*, 409 Mass. 461, 465 (1991); *Commonwealth* v. *Vann Long*, 419 Mass. 798, 807 (1995). Our decisions have ceded to trial judges broad discretion to determine the motives of the respective advocates. A trial judge must assess all of the attendant circumstances, including the composition of the entire venire, the past conduct of the challenging party during the jury selection procedures, the nature of the offense charged, the race of the defendant, and the race of the challenged juror. "Sorting out whether a permissible or impermissible reason underlies a peremptory challenge is the function of the trial judge, and we do not substitute our judgment for his if there is support for it on the record." *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 552 (1981). See *Commonwealth* v. *Curtiss*, 424 Mass. at 82.

In the present case, trial counsel asked for a race-neutral reason for the prosecutor's challenge because juror X was the only African-American on the venire at the time. While "the challenge of a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety," *Commonwealth* v. *Fryar*, 414 Mass. 732, 738 (1993), the judge made no explicit finding that the defendants had satisfied their burden of proving purposeful discrimination. See *Purkett* v. *Elem*, 514 U.S. 765, 768-769 (1995); *Commonwealth* v. *Burnett*, 418 Mass. 769, 771-772 (1994). An express finding is preferable; however, we assume from the judge's ruling that he made an implicit finding that the defendant had not established a prima facie case of impropriety. See *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. 564, 569 (1991), cert. denied sub nom. *Matthews* v. *Rakiey*, 504 U.S. 922 (1992). In his side bar remarks to both counsel, he noted that a limited number of Hispanic jurors remained on the venire and expressed concern that any further challenges of minority persons on the venire might be impermissible.

After hearing the explanation from the prosecutor concerning the removal of juror X, the judge could reasonably have felt that no set pattern of impropriety then existed, and that he had given fair warning to the prosecutor. If the peremptory challenge of juror X had left the jury with no minority jurors, a prima facie case of discrimination would have been established. *Commonwealth* v. *Harris*, 409 Mass. at 465. That never happened because at the time of the challenge the venire still

contained three Hispanic jurors. The judge was responsive to the defendant's concern that the remaining minority members of the venire receive heightened scrutiny if they were challenged. See *Commonwealth* v. *Soares*, 377 Mass. at 489-490 (composition of remaining venire after contested challenge is a significant factor to consider in assessing whether constitutional violation has occurred). He emphasized that "[a]ny other challenges to minority jurors would be highly suspect, in my opinion."

In this case it is of some import that the offenses charged were not of a type that might be expected naturally to excite racial biases. The issue of jury composition requires the greatest scrutiny where defendant and victim belong to different racial groups — particularly where the crimes in question are violent or sexual in nature. Cf. *Commonwealth* v. *Sanders*, 383 Mass. 637, 638-640 (1981). Such is not the case here.

Finally, it is significant, although certainly not dispositive, that the defendants, all Hispanics, were members of a different group than the challenged juror, who was African-American. See *Commonwealth* v. *Harris*, 409 Mass. at 465-466 (emphasizing extent to which strength of inference of impropriety in challenge is bolstered where juror and defendant are same race). While it is seldom addressed directly, the issue lurking behind contested peremptory challenges usually is some notion — whether anchored in reality or not — that group solidarity among members of traditionally disempowered minorities will encourage a juror of the same racial, ethnic, or even gender group as the defendant to be more inclined to render a verdict in the defendant's favor. These considerations are less relevant where a contested juror and defendant are not members of the same minority group. For this reason, the prosecutor's conduct in this case was not inherently suspect.

As we have stated in this opinion, a trial judge has broad discretion to determine whether or not peremptory challenges have been used to defeat the important institutional goal of providing juries that represent fair cross-sections of the community in which a case is tried. A judge's decision in this regard may not be set aside on appeal "if there is support for it on the record." *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. at 552. See *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 569. After considering all of the relevant factors, we conclude that there was adequate record support for the judge's decision.

2. *Serrano's motion to strike venire.* Before impanelment of

the jury, Serrano moved to dismiss the venire on the basis of alleged systematic exclusion of racial and ethnic minorities from jury service in Essex County. The defendant's motion was denied. He now appeals from that order.

When a defendant seeks relief on the basis of a nonrepresentative venire, he must establish not only that the composition of the particular venire available for his trial did not reflect the face of the community, but also that the jury service selection procedures in general are discriminatory. See *Commonwealth* v. *Tolentino*, 422 Mass. 515, 519 (1996). Such proof typically takes the form of statistical evidence. *Id.* at 518, 520-521.

Here, as to the first prong, the defendant has offered no convincing evidence that the venire available to him did not, in fact, contain a representative number of minority members. Of the subset of the venire that was brought into the courtroom, there were at least six or seven potential minority jurors. Further questioning might have revealed that the number was even larger. Moreover, there is no information in the record concerning the composition of the entire venire. In these circumstances, Serrano has not adequately established underrepresentation of minorities in the venire called for his trial.

Likewise, the defendant also has failed to build a sufficient case from which reliably to infer that jury selection procedures in Essex County systematically result in underrepresentation of minorities. The only "statistical" evidence offered are affidavits from a group of defense lawyers that recite their recollections as to venire compositions of trials in which they have participated. Such anecdotal evidence is inadequate. There is no indication of what methods these lawyers used to determine the race or ethnicity of jurors, or whether their observations relate to entire venires or to actual, sitting jurors. See *Commonwealth* v. *Gaskins*, 419 Mass. 809, 814 (1995) (claim of ineffective assistance of counsel because defense counsel did not raise inadequate representation of minorities in jury pool not considered where premised on speculation). Again, Serrano has failed to meet his evidentiary burden. On the facts presented to us, we cannot say that the trial judge abused his authority by denying the motion to dismiss the venire.

3. *Martinez's school zone indictments.* As originally drafted, the indictment charging Martinez with distribution of cocaine within a school zone, G. L. c. 94C, § 32J, read as follows:

> "Rafael Martinez . . . did knowingly, intentionally and

> unlawfully distribute . . . cocaine, a controlled substance defined in clause (1) of paragraph (a) of Class B of Chapter 94C, section 31."

In fact, clause (1) refers to opium; the indictment should have cited clause (4), which refers to cocaine. Before the case went to the jury, the Commonwealth noticed the error and moved to amend the indictment. Over Martinez's objection, the judge allowed the Commonwealth's motion.

Amendments to an indictment are permitted "if such amendment would not prejudice the defendant or the Commonwealth." Mass.R.Crim.P. 4(d), 378 Mass. 849 (1979). Here, Martinez has offered no indication of any prejudice, as that term is intended here, that he suffered as a result of the amendment. The indictment plainly states that "cocaine" was the drug distributed, and there is no indication that the defendant was in fact confused by what amounts to a scrivener's error. See *Commonwealth* v. *Fernandes*, 46 Mass. App. Ct. 455, 459-460 (1999) (even serious omission in indictment does not render document ineffective where defendant plainly put on notice as to offense charged). The judge, therefore, did not abuse his discretion in permitting the amendment.

The pretrial order denying the motion to dismiss the venire is affirmed. The judgments are affirmed.

*So ordered.*